84 P.3d 530

In the Matter of **DIRECTOR, DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS, Complainant–Appellant,**

v.

**KIEWIT PACIFIC COMPANY, Respondent–Appellee.**

No. 24226.

Intermediate Court of Appeals of Hawai'i.

Jan. 8, 2004.

Certiorari Denied Feb. 18, 2004.

Frances E.H. Lum, Leo B. Young, Deputy Attorneys General, State of Hawai'i, on the briefs, for complainant-appellant.

Brian G.S. Choy, Keith M. Yonamine, (Gronau & Choy), on the briefs, for respondent-appellee.

BURNS, C.J., WATANABE and LIM, JJ.

Opinion of the Court by LIM, J.

In this secondary appeal, Complainant–Appellant Director of Labor and Industrial Relations (the Director) appeals the April 3, 2001 final judgment and the underlying February 26, 2001 decision and order of the circuit court of the first circuit.[1] The circuit

---

1. The Honorable Eden Elizabeth Hifo, judge pre- siding.

court's judgment and order together affirmed the May 23, 2000 decision and order of the Labor and Industrial Relations Appeals Board (LIRAB). The LIRAB's decision and order, in turn, "reversed and vacated" the citation issued to Respondent–Appellee Kiewit Pacific Company (Kiewit) by the Director's Hawai'i Occupational Safety and Health Division (HIOSH) for violating 29 Code of Federal Regulations (C.F.R.) § 1926.501(b)(4)(ii) (2003).[2] Kiewit had failed to cover some shallow holes in the ground floor at its construction site.

We hold, contrary to Kiewit's position and the LIRAB's decision below, that 29 C.F.R. § 1926.501(b)(4)(ii) does indeed apply to shallow holes at ground level. Accordingly, we conclude the circuit court erred in affirming the LIRAB in this respect; hence, we vacate in part, affirm in part,[3] and remand.

## I. Background.

The underlying facts are undisputed. Kiewit was the general contractor building the Maui Marketplace shopping center in Kahului. On October 15 and 16, 1996, HIOSH conducted an inspection of Kiewit's job site. During the inspection, thirteen holes—each two feet square and approximately six to eight inches deep—were observed in a concrete slab on the ground floor of the project. Kiewit planned to place vertical beams in the holes to support the roof. The inspector was concerned:

When approaching work area where 15–20 masons were building shell walls, noted holes in concrete floor where vertical beams will be placed for roof support. The masons work on scaffold system and may or may not have to walk past holes (to/from scaffolds), but they had two ground crewmen (block cutter & mortar mixer) who walk around the area frequently. Also the Gradall fork truck drives around the area continuously to provide blocks for the masons. If it ran into one of these holes, a pallet of hollow-tile cmu block fall [sic] or be thrown potentially causing serious injuries.

Some of the holes had a piece of wood 4″ × 4″ placed inside the opening to reduce the hazard, but 8 of 13 had no protection at all.

On December 4, 1996, HIOSH cited Kiewit for a violation of 29 C.F.R. § 1926.501(b)(4)(ii), explaining that, "Each employee on a walking/working surface was not protected from tripping or stepping into holes; i.e., only 5 of 13 holes (2′ × 2′, approximately 6–8″ deep) were provided with covers." HIOSH deemed the violation serious, and proposed a penalty of $1,125.00.

Kiewit contested this citation (among others issued during the inspection) to the LIRAB. In a pre-hearing conference, the parties identified issues to be decided by the LIRAB in connection with the citation:

1. The issues to be determined are:

1. Whether [Kiewit] violated 29 [C.F.R. § ] 1926.501(b)(4)(ii).

 (a) If so, is the characterization of the violation as "serious" appropriate. If not, what is the appropriate characterization, if any.

 (b) If so, is the imposition and amount of the proposed $1,125.00 penalty appropriate.

---

**2.** 29 Code of Federal Regulations (C.F.R.) § 1926.501(b)(4) (2003) provides:

*Holes.* (i) Each employee on walking/working surfaces shall be protected from falling through holes (including skylights) more than 6 feet (1.8 m) above lower levels, by personal fall arrest systems, covers or guardrail systems erected around such holes.

(ii) Each employee on a walking/working surface shall be protected from tripping in or stepping into or through holes (including skylights) by covers.

(iii) Each employee on a walking/working surface shall be protected from objects falling through holes (including skylights) by covers.

**3.** The May 23, 2000 decision and order of the Labor and Industrial Relations Appeals Board (LIRAB) also concerned other citations issued by Complainant–Appellant Director of Labor and Industrial Relations (the Director) to Respondent–Appellee Kiewit Pacific Company, arising out of the same inspection. The Director's appeal to the circuit court of the first circuit targeted the LIRAB's decision and order on one of those other citations, as well as the citation at issue in the Director's appeal to this court, but the Director does not take issue here with regard to any of those other citations.

Kiewit argued that 29 C.F.R. § 1926.501(b)(4)(ii) "was intended to prevent falls from heights greater than six feet" and hence, was inapplicable to the ground-level holes. The Director argued just the opposite. After a December 9, 1998 hearing, the LIRAB sided with Kiewit and "reversed and vacated" the citation. In its May 23, 2000 decision and order, the LIRAB found, concluded and ordered, in pertinent part, as follows:

### FINDINGS OF FACT

1. On October 15 and 16, 1996, [the Director] performed an occupational safety and health inspection of [Kiewit's] jobsite at the Maui Marketplace.

2. Following the inspection, [the Director], on December 4, 1996, issued three citations against [Kiewit] for various violations of the Hawaii Occupational Safety and Health Standards:

(a) *Citation 1, Item 1 (uncovered holes):*

Violation of 29 [C.F.R. § ] 1926.501(b)(4)(ii) for not keeping holes in the ground covered.

Complainant characterized the violation as "serious[,"] and imposed a proposed penalty of $1,125.00.

. . . .

### *Citation 1, Item 1*

*29 [C.F.R. § ] 1926.501(b)(4)(ii)—uncovered holes*

3. At the inspection of [Kiewit's] work site, [the Director] observed holes in the ground that were 2 feet by 2 feet, and 6–8 inches deep.

4. The holes were located in the ground and not at a height or above any lower levels.

5. The holes were not covered.

6. 29 [C.F.R. § ] 1926.501(b)(4)(ii) is part of 29 [C.F.R.], Subpart M, entitled "Fall Protection." Subpart M sets forth the requirements and criteria for fall protection on construction sites.[4]

7. The heading for [29 C.F.R. § ] 1926.501 [ (2003) ] is entitled "Duty to have fall protection." Section 1926.501(b)(1–15) identifies fifteen work situations or conditions that are above ground and more than 6 feet above lower levels, for which fall protection is required or needed. "Holes" is listed under [§ ] 1926.501(b)(4).

. . . .

### CONCLUSIONS OF LAW

1. . . . .

We read 29 [C.F.R. § ] 1926.501(b)(4)(ii) in context with [§ ] 1926.501(b)(4)(i) and [§ ] 1926.501(b)(4)(iii) and with [§ ] 1926.501 and Subpart M as a whole, and conclude that the hazard that subsection (b)(4)(ii) seeks to prevent applies only to holes that are at heights above lower levels. Accordingly, [Kiewit] was cited for a violation of a Standard that did not apply to the situation. Accordingly, we conclude that [Kiewit] did not violate 29 [C.F.R. § ] 1926.501(b)(4)(ii).

. . . .

### ORDER

Citation 1, Item 1 . . . [is] reversed and vacated . . . . .

(Footnote supplied.)

On June 21, 2000, the Director appealed the LIRAB's decision and order to the circuit court. The circuit court's February 26, 2001 decision and order affirmed the LIRAB's May 23, 2000 decision and order and read, in relevant part, as follows:

As to the issue regarding statutory interpretation of "fall protection" standards, the Court finds no error in [the LIRAB's] interpretation of 29 [C.F.R. § ] 1926.501(b)(4)(ii) concluding that it applies only to holes that are at heights above lower levels, and that the standard did not apply to the factual situation for which [the Director] issued the violation (uncovered holes in the ground). The interpretation properly read the standards *in pari materia*, and such reading supports [the LIRAB's] interpretation. The specific lan-

---

4. "Subpart M" comprises 29 C.F.R. §§ 1926.500–1926.503 (2003).

guage at issue is as follows: "Each employee on [a] walking/working surface shall be protected from tripping in or stepping into or through holes (including skylights) by covers." 29 [C.F.R. § ] 1926.501(b)(4)(ii).

[The Director] argues [the LIRAB] ignored the definition of "walking/working surface[,"] defined at 29 [C.F.R. § ] 1926.500(b) [ (2003) ], as follows: "Walking/working surface means any surface, whether horizontal or vertical on which an employee walks or works, including, but not limited to, floors, roofs, ramps, bridges, runways, form work and concrete reinforcing steel but not including ladders, vehicles, or trailers, on which employees must be located in order to perform their job duties." [The Director] emphasizes the word "floors" found in the walking/working definition. But that does not support [the Director's] argument. The same definitional section defines "Hole" as follows: "Hole means a gap or void 2 inches (5.1 cm) or more in its least dimension, in a floor, roof, or other walking/working surface." Later, the definition of "Lower levels" is set forth as follows: "Lower levels means those areas or surfaces to which an employee can fall. Such areas or surfaces include, but are not limited to, ground levels, floors, platforms, ramps, runways, excavations, pits, tanks, material, water, equipment, structures, or portions thereof." It is clear from this definition that "floors" are different from "ground levels[."] Indeed, the definitional section supports [the LIRAB's] interpretation that a hole as set forth in the standard at issue does not include a hole at ground level absent some condition making "ground level" a level from which an employee can fall. Rather, the standard covers a hole found in a floor where an employee can fall from that floor to ground level; that is, [the LIRAB] properly determined that the standard only applies to holes at heights above "lower levels" and thus was not applicable in this case.

For the above reasons, this Court affirms the Decision and Order of [the LIRAB] dated May 23, 2000.

The circuit court entered final judgment in favor of Kiewit on April 3, 2001. The Director now brings this secondary appeal of the circuit court's decision and order and final judgment, to us.

## II. Standards of Review.

This court has outlined a general overview of the standard of review for a secondary appeal of an agency decision:

> Appeal of a decision made by the circuit court upon its review of an agency's decision is a secondary appeal. The standard of review is one in which this court must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in Hawai'i Revised Statutes (HRS) § 91–14(g) (1993) to the agency's decision. *University of Hawai'i Professional Assembly v. Tomasu*, 79 Hawai'i 154, 157, 900 P.2d 161, 164 (1995). Hence, the agency's findings of fact are reviewed under the clearly erroneous standard. *Wailuku Sugar Co. v. Agsalud*, 65 Haw. 146, 148, 648 P.2d 1107, 1110 (1982); HRS § 91–14(g)(5) (1993). "A finding of fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made." *State v. Okumura*, 78 Hawai'i 383, 392, 894 P.2d 80, 89 (1995) (citation and internal quotation marks omitted). On the other hand, an agency's legal conclusions are freely reviewable. *Tate v. GTE Hawaiian Tel. Co.*, 77 Hawai'i 100, 102–03, 881 P.2d 1246, 1248–49 (1994). Hence, an agency's statutory interpretation is reviewed *de novo*.

*Keanini* [*v. Akiba*], 84 Hawai'i [407,] 410, 935 P.2d [122,] 125 [ (App.1997) ] (footnote omitted).

> However, in deference to the administrative agency's expertise and experience in its particular field, the courts should not substitute their own judgment for that of the administrative agency where mixed questions of fact and law are presented. This is particularly true where

the law to be applied is not a statute but an administrative rule promulgated by the same agency interpreting it. To be granted deference, however, the agency's decision must be consistent with the legislative purpose.

*Camara v. Agsalud,* 67 Haw. 212, 216, 685 P.2d 794, 797 (1984) (internal citations and citations omitted).

Our review is further qualified by the principle that the [agency's] decision carries a presumption of validity and [the party seeking to reverse the agency's decision] has the heavy burden of making a convincing showing that the decision is invalid because it is unjust and unreasonable in its consequences.

*Chock v. Bitterman,* 5 Haw.App. 59, 64, 678 P.2d 576, 580 (1984) (citations omitted). *Keanini v. Akiba,* 93 Hawai'i 75, 79, 996 P.2d 280, 284 (App.2000) (ellipses omitted; some brackets in the original).

 Accordingly, in deciding "whether the circuit court was right or wrong in its decision, [we apply] the standards set forth in [HRS § 91–14(g) ] to the agency's decision." *Keanini,* 93 Hawai'i at 79, 996 P.2d at 284 (citations and block quote format omitted). HRS § 91–14(g) provides:

(g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedure; or

(4) Affected by other error of law; or

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

The supreme court has parsed HRS § 91–14(g), thus:

"Under HRS § 91–14(g), [conclusions of law] are reviewable under subsections (1), (2), and (4); questions regarding procedural defects are reviewable under subsection (3); [findings of fact] are reviewable under subsection (5); and an agency's exercise of discretion is reviewable under subsection (6)." *Potter v. Hawaii Newspaper Agency,* 89 Hawai'i 411, 422, 974 P.2d 51, 62 (1999) (quoting *Korean Buddhist Dae Won Sa Temple v. Sullivan,* 87 Hawai'i 217, 229, 953 P.2d 1315, 1327 (1998) (quoting *Konno v. County of Hawai'i,* 85 Hawai'i 61, 77, 937 P.2d 397, 413 (1997) (quoting *Bragg v. State Farm Mutual Auto. Ins.,* 81 Hawai'i 302, 305, 916 P.2d 1203, 1206 (1996)))).

*Korsak v. Hawaii Permanente Med. Group, Inc.,* 94 Hawai'i 297, 302, 12 P.3d 1238, 1243 (2000) (original bracketed material replaced). It follows from the foregoing, that where the underlying facts are undisputed and the agency's decision comprises a pure conclusion of law in statutory interpretation, our review is *de novo* and the standard of review is right/wrong:

In earlier decisions, this court has used the same clearly erroneous standard to review the conclusions drawn by the administrative agency in applying the facts to the law. *E.g., In re Hawaiian Telephone Co.,* 65 Haw. 293, 651 P.2d 475 (1982); *Jones v. Hawaiian Electric Co.,* 64 Haw. 289, 639 P.2d 1103 (1982); *McGlone v. Inaba,* 64 Haw. 27, 636 P.2d 158 (1981). The earlier decisions by this court seem to indicate that the clearly erroneous standard for review of conclusions of law is mandated by HRS § 91–14(g), but a careful reading of the statute does not support this proposition. If, as the above-cited decisions suggest, all administrative findings, conclusions, decisions, or orders may be reversed only if clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record, paragraphs (1) to (4) and (6) of HRS § 91–14(g) would be mere surplusage. Only paragraph (5) would be meaningful and given operative effect. It is a cardinal rule of statutory construction that courts are bound, if ra-

tional and practicable, to give effect to all parts of a statute, and that no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can be legitimately found which will give force to and preserve all the words of the statute. *In re Ainoa*, 60 Haw. 487, 490, 591 P.2d 607, 609 (1979); *Lopez v. Board of Trustees, Emp. Ret. Sys.*, 66 Haw. 127, 657 P.2d 1040 (1983). To give legal import to all of the paragraphs of HRS § 91–14(g), paragraph (5) should be read as applicable only to a review of administrative fact-finding inasmuch as it is concerned with evidence in the record. Additionally, the "clearly erroneous" standard has long been used in reviewing findings of fact only. *See*, Rule 52(a), Hawaii Rules of Civil Procedure; Davis, *Administrative Law of the Seventies*, §§ 19.00–30.10 (1976); Stern, *Review of Findings of Administrators, Judges and Juries: A Comparative Analysis*, 58 Harv. L.Rev. 70 (1944).

We now hold that the circuit courts as well as this court are free to reverse the agency's decision if affected by an error of law. HRS § 91–14(g)(4).

*Camara*, 67 Haw. at 215–16, 685 P.2d at 796–97 (footnotes omitted). *See also Keanini*, 93 Hawai'i at 79, 996 P.2d at 284 ("On the other hand, an agency's legal conclusions are freely reviewable. Hence, an agency's statutory interpretation is reviewed *de novo*." (Citations and block quote format omitted.)).

The question of deference remains, however, despite the standard just described of a fresh review of an agency's conclusions of law in statutory interpretation. *See, e.g., Camara*, 67 Haw. at 216, 685 P.2d at 797; *Keanini*, 93 Hawai'i at 79, 996 P.2d at 284. At first blush, the notion of court deference on *de novo* review for right or wrong seems somewhat oxymoronic. And, indeed, the supreme court appears to have noted as much:

Several of our prior decisions contrarily suggest that agency interpretations of statutes are reviewed *de novo*. *See, e.g., Maha'ulepu v. Land Use Comm'n*, 71 Haw. 332, 336, 790 P.2d 906, 908 (1990); *In re Maldonado*, 67 Haw. 347, 351, 687 P.2d

1, 4 (1984). We reconcile this apparent disparity in the present discussion.

*In re Water Use Permit Applications* [ *(Water Use)* ], 94 Hawai'i 97, 145 n. 44, 9 P.3d 409, 457 n. 44 (2000). The *Water Use* court's footnoted discussion clarified court deference to an agency's statutory interpretation:

In construing statutes, we have recognized that

our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists . . . .

In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1–15(1) [ (1993) ]. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

*Gray* [ *v. Administrative Dir. of the Court* ], 84 Hawai'i [138,] at 148, 931 P.2d [580,] at 590 [ (1997) ] (quoting *State v. Toyomura*, 80 Hawai'i 8, 18–19, 904 P.2d 893, 903–04 (1995)) (brackets and ellipsis points in original) (footnote omitted). This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it . . . to discover its true meaning." HRS § 1–15(2) (1993). "Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." HRS § 1–16 (1993).

*Barnett v. State*, 91 Hawai'i 20, 31, 979 P.2d 1046, 1057 (1999) (quoting *State v.*

*Davia*, 87 Hawai'i 249, 254, 953 P.2d 1347, 1352 (1998)).

If we determine, based on the foregoing rules of statutory construction, that the legislature has unambiguously spoken on the matter in question, then our inquiry ends. See, e.g., (*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). When the legislative intent is less than clear, however, this court will observe the "well established rule of statutory construction that, where an administrative agency is charged with the responsibility of carrying out the mandate of a statute which contains words of broad and indefinite meaning, courts accord persuasive weight to administrative construction and follow the same, unless the construction is palpably erroneous." *Brown v. Thompson*, 91 Hawai'i 1, 18, 979 P.2d 586, 603 (1999) (quoting *Keliipuleole v. Wilson*, 85 Hawai'i 217, 226, 941 P.2d 300, 309 (1997)). *See also Government Employees Ins. Co. v. Hyman*, 90 Hawai'i 1, 5, 975 P.2d 211, 215 (1999) ("[J]udicial deference to agency expertise is a guiding precept where the interpretation and application of broad or ambiguous statutory language by an administrative tribunal are the subject of review." (quoting *Richard v. Metcalf*, 82 Hawai'i 249, 252, 921 P.2d 169, 172 (1996))). Such deference "reflects a sensitivity to the proper roles of the political and judicial branches," insofar as "the resolution of ambiguity in a statutory text

is often more a question of policy than law." *Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 696, 111 S.Ct. 2524, 115 L.Ed.2d 604 (1991).

The rule of judicial deference, however, does not apply when the agency's reading of the statute contravenes the legislature's manifest purpose. *See Camara v. Agsalud*, 67 Haw. 212, 216, 685 P.2d 794, 797 (1984) ("To be granted deference, . . . the agency's decision must be consistent with the legislative purpose."); *State v. Dillingham Corp.*, 60 Haw. 393, 409, 591 P.2d 1049, 1059 (1979) ("[N]either official construction or usage, no matter how long indulged in, can be successfully invoked to defeat the purpose and effect of a statute which is free from ambiguity. . . ."). Consequently, we have not hesitated to reject an incorrect or unreasonable statutory construction advanced by the agency entrusted with the statute's implementation. *See, e.g., Government Employees Ins. Co. v. Dang*, 89 Hawai'i 8, 15, 967 P.2d 1066, 1073 (1998); *In re Maldonado*, 67 Haw. 347, 351, 687 P.2d 1, 4 (1984).

*Water Use*, 94 Hawai'i at 144–45, 9 P.3d at 456–57 (brackets and ellipses in the original; footnote omitted; block quote formatting corrected).[5]

▮▮▮▮ It further appears that reviewing court deference is especially due in the discrete context of an agency's interpretation of its own administrative rules,[6] given the su-

---

5. We also note the presumption of validity Hawai'i courts have held is due an agency's decision:

> Our review is further qualified by the principle that the [agency's] decision carries a presumption of validity and [the party seeking to reverse the agency's decision] has the heavy burden of making a convincing showing that the decision is invalid because it is unjust and unreasonable in its consequences.

*Chock v. Bitterman*, 5 Haw.App. 59, 64, 678 P.2d 576, 580 (1984) (citations omitted). We observe, however, that a presumption of validity is not at all peculiar to appeals of agency decisions. *See, e.g., Ala Moana Boat Owners' Ass'n v. State*, 50 Haw. 156, 158–59, 434 P.2d 516, 518 (1967) (invoking "the presumption of correctness and regularity that attend [sic] the decision of the lower court"). Assuming, *arguendo*, that this presumption of validity is generic and not simply another way of expressing the special deference

due an agency's decision, *but see In re Hawaii Elec. Light Co., Inc.*, 60 Haw. 625, 630, 594 P.2d 612, 617 (1979) ("a presumption of validity is accorded to decisions of administrative bodies acting within their sphere of expertise" (citations omitted)), we are confident that a reviewing court's determination that an agency's conclusion of law is wrong, conclusively rebuts any attendant generic presumption of validity.

6. General principles of statutory construction also apply to administrative rules:

> The general principles of construction which apply to statutes also apply to administrative rules. As in statutory construction, courts look first at an administrative rule's language. If an administrative rule's language is unambiguous, and its literal application is neither inconsistent with the policies of the statute the rule implements nor produces an absurd or unjust result, courts enforce the rule's plain mean-

preme court's proviso in *Camara*, 67 Haw. at 216, 685 P.2d at 797:

> This [ (deference) ] is particularly true where the law to be applied is not a statute but an administrative rule promulgated by the same agency interpreting it. To be granted deference, however, the agency's decision must be consistent with the legislative purpose.

(Citations omitted.) *Cf. Int'l Bhd. of Elec. Workers [(IBEW) ] v. Hawaiian Tel. Co.*, 68 Haw. 316, 322, 713 P.2d 943, 950 (1986) ("agency's interpretation of its rules receives

> ing.... When ... an administrative rule's language is ambiguous, courts must ascertain and effectuate the rule's intent. In order to effectuate the rule's intent, it is appropriate to consider the rule's "legislative" history.
>
> *Int'l. Bhd. of Elec. Workers v. Hawaiian Tel. Co.*, 68 Haw. 316, 323, 713 P.2d 943, 950–51 (1986) (citations omitted).

**7.** Hawaii Revised Statutes (HRS) § 396–4 (Supp. 2002) provides, in relevant part:

> (a) Administration. The department [of labor and industrial relations] shall be responsible for administering occupational safety and health standards throughout the State.
>
> (1) The department shall prescribe and enforce rules and regulations under chapter 91 as may be necessary for carrying out the purposes and provisions of this chapter [on occupational safety and health][.]
>
> ....
>
> (d) Enforcement.
>
> ....
>
> (7) The department may prosecute, defend, and maintain actions in the name of the department for the enforcement of the provisions of this chapter, including the enforcement of any order issued by it, the appeal of any administrative or court decision, and other actions necessary to enforce this chapter.

In addition, general statutory provisions governing the department of labor and industrial relations provide, in pertinent part, at HRS § 371–7 (1993):

> In addition to such other duties and powers as may be conferred upon the department of labor and industrial relations by law, the department shall:
>
> ....
>
> (2) Make, modify, and repeal reasonable rules and regulations of general application for the protection of life, health, and safety of employees in every employment or place of employment; provided that the rules and regulations shall not conflict with any rules or regulations of the department of health covering the same subject matter;

deference unless it is plainly erroneous or inconsistent with the underlying legislative purpose" (citations omitted)); *Keanini*, 84 Hawai'i at 413, 935 P.2d at 128 (the same). In this discrete connection, the parameters of deference to agency interpretation become even murkier where, as here, two functionally—but not formally—separate agencies vie ·over the interpretation of their occupational safety and health regulations, one agency generally charged with promulgation and enforcement and the other agency generally charged with adjudication.[7]

> (3) Make, modify, and repeal such other reasonable rules and regulations of general application as may be necessary to carry into effect this chapter.
>
> The rules and regulations of the department and any amendments thereto, when adopted in accordance with chapter 91 shall have the force and effect of law and shall be enforced in the same manner as this chapter.
>
> ....

Further, HRS § 371–12 (1993) mandates, in relevant part, that "[t]he department of labor and industrial relations shall:.... (3) Enforce any other labor laws enacted by the legislature of the State; (4) Enforce any rules or regulations of the department[.]" (Format modified.) Finally, with respect to the Director, HRS § 371–8 (1993) provides, in pertinent part:

> In addition to such other duties and powers as may be conferred upon the director by law, the director of labor and industrial relations shall:
>
> ....
>
> (2) Cause the enforcement of rules and regulations;
>
> (3) Propose such rules and regulations or changes in rules and regulations, as the director deems advisable for the protection of life, health, and safety of employees, in every employment or place of employment. The director may appoint committees composed of employers, employees, and experts to suggest rules and regulations or changes therein.
>
> ....

With respect to the LIRAB, HRS § 371–4 (Supp.2002) provides, in pertinent part:

> (a) There is created a labor and industrial relations appeals board composed of three members nominated and, by and with the advice and consent of the senate, appointed by the governor[.]
>
> ....
>
> (b) The [labor and industrial relations appeals board] shall have power to decide appeals from decisions and orders of the director of labor and industrial relations issued under the workers' compensation law and any other law for which an appeal to the board is provided by law.

In *Martin v. Occupational Safety and Health Review Comm'n,* 499 U.S. 144, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991), the United States Supreme Court encountered the cognate federal scheme for regulating occupational safety and health, what it termed a " 'split enforcement' structure[.]" *Id.* at 151, 111 S.Ct. 1171. The Supreme Court described the virtually identical federal structure, thus:

> The Occupational Safety and Health Act of 1970 (OSH Act or Act) establishes a comprehensive regulatory scheme designed "to assure so far as possible ... safe and healthful working conditions" for "every working man and woman in the Nation." 29 U.S.C. § 651(b). See generally *Atlas Roofing Co. v. Occupational Safety and Health Review Comm'n,* 430 U.S. 442, 444–445, 97 S.Ct. 1261, 1263–1264, 51 L.Ed.2d 464 (1977). To achieve this objective, the Act assigns distinct regulatory tasks to two different administrative actors: the Secretary of Labor (Secretary); and the Occupational Safety and Health Review Commission (Commission), a three-member board appointed by the President with the advice and consent of the Senate. 29 U.S.C. §§ 651(b)(3), 661.
>
> The Act charges the Secretary with responsibility for setting and enforcing workplace health and safety standards. See *Cuyahoga Valley R. Co. v. United Transportation Union,* 474 U.S. 3, 6–7, 106 S.Ct. 286, 287–288, 88 L.Ed.2d 2 (1985) (per curiam). The Secretary establishes these standards through the exercise of rulemaking powers. See 29 U.S.C. § 665. If the Secretary (or the Secretary's designate) determines upon investigation that an employer is failing to comply with such a standard, the Secretary is authorized to issue a citation and to assess the employer a monetary penalty. §§ 658–659, 666.
>
> The Commission is assigned to "carr[y] out adjudicatory functions" under the Act.

> § 651(b)(3). If an employer wishes to contest a citation, the Commission must afford the employer an evidentiary hearing and "thereafter issue an order, based on findings of fact, affirming, modifying, or vacating the Secretary's citation or proposed penalty." § 659(c). Initial decisions are made by an administrative law judge (ALJ), whose ruling becomes the order of the Commission unless the Commission grants discretionary review. § 661(j). Both the employer and the Secretary have the right to seek review of an adverse Commission order in the court of appeals, which must treat as "conclusive" Commission findings of fact that are "supported by substantial evidence." § 660(a)-(b).

*Martin,* 499 U.S. at 147–48, 111 S.Ct. 1171 (brackets in the original).

The issue in the *Martin* case and the issue in ours are also congeners. In *Martin,* as in our case, the issue was whether the Secretary cited the employer under the correct federal regulation. The Commission agreed with the employer that another federal regulation was apposite instead, and vacated the citation. As was the case here, the court of appeals on judicial review sided with the Commission and against the Secretary. *Id.* at 148–50, 111 S.Ct. 1171.

> The court [of appeals] concluded that the relevant regulations were ambiguous as to the employer's obligation to assure proper fit of an employee's respirator. The court thus framed the issue before it as *whose* reasonable interpretation of the regulations, the Secretary's or the Commission's, merited the court's deference. The court held that the Commission's interpretation was entitled to deference under such circumstances, reasoning that Congress had intended to delegate to the Commission the normal complement of adjudicative powers possessed by traditional administrative agencies and that such an adjudicative function necessarily encompasses the

.... 
(g) The board shall be within the department of labor and industrial relations for budgetary and administrative purposes only.
....
HRS § 396–11 (1993) allows, *inter alia,* employer appeals to the LIRAB from any occupational

safety and health citation issued by the Director. HRS § 396–12 (1993), in turn, provides for HRS ch. 91 (1993 & Supp.2002) appeals to the circuit court by the Director or any party to the proceedings before the LIRAB aggrieved by its decision and order.

power to declare the law. Although the court determined that it would certainly be possible to reach an alternate interpretation of the ambiguous regulatory language, the court nonetheless concluded that the Commission's interpretation was a reasonable one. The court therefore deferred to the Commission's interpretation without assessing the reasonableness of the Secretary's competing view.

*Martin,* 499 U.S. at 149–50, 111 S.Ct. 1171 (original brackets, citations and internal quotation marks omitted) (emphasis in the original).

■ The Supreme Court was thus squarely confronted with the question,

> to whom should a reviewing court defer when the Secretary of Labor and the Occupational Safety and Health Review Commission furnish reasonable but conflicting interpretations of an ambiguous regulation promulgated by the Secretary under the Occupational Safety and Health Act of 1970, 84 Stat. 1590, as amended, 29 U.S.C. § 651 *et seq.*

*Martin,* 499 U.S. at 146, 111 S.Ct. 1171. At the outset, the Supreme Court cited "well[-]established" law:

> It is well established "that an agency's construction of its own regulations is entitled to substantial deference." *Lyng v. Payne,* 476 U.S. 926, 939, 106 S.Ct. 2333, 2341, 90 L.Ed.2d 921 (1986); accord, *Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 801–802, 13 L.Ed.2d 616 (1965). In situations in which "the meaning of [regulatory] language is not free from doubt," the reviewing court should give effect to the agency's interpretation so long as it is "reasonable," *Ehlert v. United States,* 402 U.S. 99, 105, 91 S.Ct. 1319, 1323, 28 L.Ed.2d 625 (1971), that is, so long as the interpretation "sensibly conforms to the purpose and wording of the regulations," *Northern Indiana Pub. Serv. Co. v. Porter County Chapter of Izaak Walton League of America, Inc.,* 423 U.S. 12, 15, 96 S.Ct. 172, 173, 46 L.Ed.2d 156 (1975). Because applying an agency's regulation to complex or changing circumstances calls upon the agency's unique expertise and policymaking prerogatives, we presume that the power authoritatively to interpret its own regulations is a component of the agency's delegated lawmaking powers. See *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 566, 568, 100 S.Ct. 790, 797, 798, 63 L.Ed.2d 22 (1980).

*Martin,* 499 U.S. at 150–51, 111 S.Ct. 1171 (brackets in the original). The key to especial deference to an agency's interpretation of its own rules and regulations, then, is the agency's legislative prerogative and the expertise it acquires, in promulgating as well as enforcing its own rules and regulations. *Cf. Water Use,* 94 Hawai'i at 144–45, 9 P.3d at 456–57 (regarding the bases for reviewing court deference to an agency's statutory interpretation). This preliminary but fundamental principle poses little problem when applied to

> the traditional 'unitary' agency, which under the Administrative Procedure Act (APA) generally must divide enforcement and adjudication between separate personnel, see 5 U.S.C. § 554(d). See generally Johnson, *The Split–Enforcement Model: Some Conclusions from the OSHA and MSHA Experiences,* 39 Admin.L.Rev. 315, 317–319 (1987).

*Martin,* 499 U.S. at 151, 111 S.Ct. 1171. Its application to the split enforcement structure requires a somewhat nicer point of distinction:

> [T]he power to render authoritative interpretations of OSH Act regulations is a "necessary adjunct" of the Secretary's powers to promulgate and to enforce national health and safety standards. The Secretary enjoys readily identifiable structural advantages over the Commission in rendering authoritative interpretations of OSH Act regulations. Because the Secretary promulgates these standards, the Secretary is in a better position than is the Commission to reconstruct the purpose of the regulations in question. Moreover, by virtue of the Secretary's statutory role as enforcer, the Secretary comes into contact with a much greater number of regulatory problems than does the Commission, which encounters only those regulatory episodes resulting in contested citations. Cf. Note, *Employee Participation in Occupational*

*Safety and Health Review Commission Proceedings,* 85 Colum.L.Rev. 1317, 1331, and n. 90 (1985) (reporting small percentage of OSH Act citations contested between 1979 and 1985). Consequently, the Secretary is more likely to develop the expertise relevant to assessing the effect of a particular regulatory interpretation. Because historical familiarity and policymaking expertise account in the first instance for the presumption that Congress delegates interpretive lawmaking power to the agency rather than to the reviewing court, see, *e.g., Mullins Coal Co. v. Director, Office of Workers' Compensation Programs,* 484 U.S. 135, 159, 108 S.Ct. 427, 440, 98 L.Ed.2d 450 (1987); *Ford Motor Credit Co. v. Milhollin, supra,* 444 U.S., at 566, 100 S.Ct., at 797; *INS v. Stanisic,* 395 U.S. 62, 72, 89 S.Ct. 1519, 1525, 23 L.Ed.2d 101 (1969), we presume here that Congress intended to invest interpretive power in the administrative actor in the best position to develop these attributes.

. . . .

. . . . But in these cases, we concluded that agency adjudication is a generally permissible mode of law-making and policymaking only because the unitary agencies in question also had been delegated the power to make law and policy through rulemaking. See [*NLRB v.*] *Bell Aerospace [Co.*], [ ] 416 U.S.[267,] 292–294, 94 S.Ct. [1757,] 1770–1772[, 40 L.Ed.2d 134 (1974) ]; [*SEC v.*] *Chenery Corp.,* [ ] 332 U.S.[194,] 202–203, 67 S.Ct. [1575,] 1580–1581[, 91 L.Ed. 1995 (1947) ]. See generally Shapiro, *The Choice of Rulemaking or Adjudication in the Development of Administrative Policy,* 78 Harv.L.Rev. 921 (1965). Insofar as Congress did not invest the Commission with the power to make law or policy by other means, we cannot infer that Congress expected the Commission to use its adjudicatory power to play a policymaking role. Moreover, when a traditional, unitary agency uses adjudication to engage in lawmaking by regulatory interpretation, it necessarily interprets regulations that *it* has promulgated. This, too, cannot be said of the Commission's power to adjudicate. *Martin,* 499 U.S. at 152–54, 111 S.Ct. 1171 (emphasis in the original).

In the course of its reasoning, and by the way, the *Martin* Court also imbued informal agency enforcement guidelines with some weight on judicial review:

In addition, the Secretary regularly employs less formal means of interpreting regulations prior to issuing a citation. These include the promulgation of interpretive rules, see, *e.g., Marshall v. W and W Steel Co.,* 604 F.2d 1322, 1325–1326 (C.A.10 1979); cf. *Whirlpool Corp. v. Marshall,* 445 U.S. 1, 11, 100 S.Ct. 883, 890, 63 L.Ed.2d 154 (1980), and the publication of agency enforcement guidelines, see United States Department of Labor, *OSHA Field Operations Manual* (3d ed.1989). See generally S. Bokat & H. Thompson, *Occupational Safety and Health Law* 658–660 (1988). Although not entitled to the same deference as norms that derive from the exercise of the Secretary's delegated lawmaking powers, these informal interpretations are still entitled to some weight on judicial review. See *Batterton v. Francis,* 432 U.S. 416, 425–426, and n. 9, 97 S.Ct. 2399, 2405–2406, and n. 9, 53 L.Ed.2d 448 (1977); *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944); *Whirlpool, supra,* 445 U.S., at 11, 100 S.Ct., at 890. A reviewing court may certainly consult them to determine whether the Secretary has consistently applied the interpretation embodied in the citation, a factor bearing on the reasonableness of the Secretary's position. See *Ehlert v. United States,* 402 U.S. [99,] 105, 91 S.Ct.[1319,] 1323[, 28 L.Ed.2d 625 (1971) ].

*Martin,* 499 U.S. at 157, 111 S.Ct. 1171.

In closing, the *Martin* Court issued a caveat for its readers:

We emphasize the narrowness of our holding. We deal in this case only with the division of powers between the Secretary and the Commission under the OSH Act. We conclude from the available indicia of legislative intent that Congress did not intend to sever the power authoritatively to interpret OSH Act regulations from the Secretary's power to promulgate and enforce them. Subject only to constitutional

limits, Congress is free, of course, to divide these powers as it chooses, and we take no position on the division of enforcement and interpretive powers within other regulatory schemes that conform to the split-enforcement structure. Nor should anything we say today be understood to bear on whether particular divisions of enforcement and adjudicative power within a unitary agency comport with § 554(d) of the APA.

In addition, although we hold that a reviewing court may not prefer the reasonable interpretations of the Commission to the reasonable interpretations of the Secretary, we emphasize that the reviewing court should defer to the Secretary only if the Secretary's interpretation *is* reasonable. The Secretary's interpretation of an ambiguous regulation is subject to the same standard of substantive review as any other exercise of delegated lawmaking power. See 5 U.S.C. § 706(2)(A); *Batterton v. Francis, supra,* 432 U.S. at 426, 97 S.Ct. at 2406.

*Martin,* 499 U.S. at 157–58, 111 S.Ct. 1171 (emphasis in the original). Our research reveals nothing definitive vis a' vis our legislature's intent, regarding "the division of enforcement and interpretive powers[,]" *id.* at 158, 111 S.Ct. 1171 between the Director and the LIRAB in the State occupational and safety and health regulatory scheme. Hence, *Martin* is, at best, merely suggestive as to the standard of review in our case.

■ Whatever its status as authority here, *Martin* begs the question whether the Director's interpretation of 29 C.F.R. § 1926.501(b)(4)(ii) could in any event be entitled to deference, where the department of labor and industrial relations simply adopted the relevant federal occupational safety and health regulations in a thoroughly wholesale manner. Hawaii Administrative Rules § 12–121.2–1 (2003):

> **Incorporation of federal standard.** Title 29, Code of Federal Regulations, Subpart M, entitled "Fall Protection", published by the Office of the Federal Register, National Archives and Records Administration, on August 9, 1994; and the amendments published on January 26, 1995; Au-

gust 2, 1995; and January 18, 2001, are made a part of this chapter.

(Bold typesetting in the original.) (Implementing HRS § 396–4(a)(1) (Supp.2002), which authorizes the department of labor and industrial relations to "prescribe and enforce rules under chapter 91 as may be necessary for carrying out the purposes and provisions of this chapter [on occupational safety and health].") Again, so long as the department is legislatively delegated the franchise of promulgating the pertinent regulations, and acquires relevant expertise in enforcing them, *see Martin,* 499 U.S. at 150–51, 111 S.Ct. 1171; *cf. Water Use,* 94 Hawai'i at 144–45, 9 P.3d at 456–57, it would follow that the answer is yes. *See, e.g., Communities for a Better Env't v. State Water Res. Control Bd.,* 109 Cal.App.4th 1089, 1 Cal.Rptr.3d 76, 89 (2003) ("we extend considerable deference to an administrative agency's interpretation of its own regulations *or* the regulatory scheme which the agency implements or enforces" (emphasis supplied)); *Yelder v. Hornsby,* 666 F.Supp. 1518, 1521 (M.D.Ala.1987) ("absent clear and unambiguous language in the federal regulation, a court must give deference to any reasonably acceptable interpretation by the federal agency *or,* in the absence of a federal interpretation, by the state agency" (citations omitted; emphasis supplied)).

### III. Discussion.

■ The Director raises the following point of error on appeal:

> The Circuit Court erred in interpreting the provisions of 29 [C.F.R. § ] 1926.501(b)(4)(ii) as only applying to holes located at heights above a lower level and not applicable to holes located at ground level.... The court ignored the plain language of the standard and the intent of the occupational safety and health law and the standard, and exceeded its judicial bounds by grafting an additional requirement into the standard, thereby, erroneously interpreting 29 [C.F.R. § ] 1926.501(b)(4)(ii).

We agree with the Director.

29 C.F.R. § 1926.501(b)(4) provides:

> *Holes.* (i) Each employee on walking/working surfaces shall be protected from falling through holes (including sky-

lights) more than 6 feet (1.8 m) above lower levels, by personal fall arrest systems, covers, or guardrail systems erected around such holes.

(ii) Each employee on a walking/working surface shall be protected from tripping in or stepping into or through holes (including skylights) by covers.

(iii) Each employee on a walking/working surface shall be protected from objects falling through holes (including skylights) by covers.

In our reading, the language of 29 C.F.R. § 1926.501(b)(4)(ii), *IBEW*, 68 Haw. at 323, 713 P.2d at 950 ("courts look first at an administrative rule's language" (citation omitted)), clearly refers to holes in "a walking/working surface" without limitation as to their height.

Considering the context of the entire rule and its purpose, *cf. Water Use*, 94 Hawai'i at 144, 9 P.3d at 456 ("we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose" (citations and block quote format omitted)), it seems equally clear to us that each of the three subsections of 29 C.F.R. § 1926.501(b)(4) addresses a different safety hazard posed by holes,[8] as part of a comprehensive regulatory scheme—that 29 C.F.R. § 1926.501(b)(4)(i) requires safety measures, including covers, for any hole more than six feet above a lower level, tailored to the particular hazards of falling through such holes from such heights; that 29 C.F.R. § 1926.501(b)(4)(ii) requires covers as a safety measure for any other hole, to preclude what might generally be described as tripping hazards; and that 29 C.F.R. § 1926.501(b)(4)(iii) requires hole covers as a safety measure to protect workers from objects that might fall through holes overhead. In light of the pellucid language and purpose of the rule as a whole, the interpretation of the circuit court, quoted above, appears strained, if not tortured—a reach too far and complicated to be elegant and persuasive.

Besides, if, as Kiewit urges, 29 C.F.R. § 1926.501(b)(4)(ii) applies only to holes more than six feet above lower levels, we cannot conceive of why 29 C.F.R. § 1926.501(b)(4)(i) at all exists, other than to suggest alternative safety measures that would have been better included in the provision in question, or to make a feckless distinction between tripping falls and falls in general without regard to height:

> It is a cardinal rule of statutory construction that courts are bound, if rational and practicable, to give effect to all parts of a statute, and that no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can be legitimately found which will give force to and preserve all the words of the statute.

*Camara*, 67 Haw. at 215–16, 685 P.2d at 797 (citations omitted).

In sum, it appears the language and purpose of 29 C.F.R. § 1926.501(b)(4)(ii) are unambiguously as the Director construes them to be. However, as Kiewit and the LIRAB pointed out, and we acknowledge, that with the exception of 29 C.F.R. § 1926.501(b)(4)(ii), the subsections of 29 C.F.R. Subpart M all address falls from heights.[9] Hence, in wider context, the provision in question appears to be an anomaly. Assuming, *arguendo*, that this incongruence renders the regulatory language—which we have deemed clear—nonetheless ambiguous, we are free to resort to extrinsic aids in interpretation. *IBEW*, 68 Haw. at 323, 713 P.2d at 950 ("When ... an administrative rule's language is ambiguous, courts must ascertain and effectuate the rule's intent. In order to effectuate the rule's intent, it is appropriate to consider the rule's 'legislative' history." (Citations omitted.)). *But cf. State v. Camara*, 81 Hawai'i 324, 329, 916 P.2d 1225, 1230 (1996) ("the plain language rule of statutory construction, does not preclude an examination of sources other than the language of the statute itself even when the language appears clear upon perfunctory

---

8. As defined by 29 C.F.R. § 1926.500(b) (2003).

9. Each of the fifteen subsections of 29 C.F.R. § 1926.501(b) contains provisions applicable to working conditions six feet or more above lower levels.

review" (citation and block quote format omitted)).

In this connection, the federal Commission's decisions can be, at the very least, instructive. *Cf. Price v. Obayashi Hawaii Corp.*, 81 Hawai'i 171, 181, 914 P.2d 1364, 1374 (1996) ("in instances where Hawai'i case law and statutes are silent, this court can look to parallel federal law for guidance" (citations omitted)). For example, the Commission has decided that the two safety standards articulated in 29 C.F.R. §§ 1926.501(b)(4)(i) and (ii) are entirely distinct:

> The standards address two different hazards. Section 1926.501(b)(4)(i) addresses a fall hazard, i.e., falling completely through the hole from its level to the level below. Section 501(b)(4)(ii) addresses a tripping hazard or "stepping into or through holes," where the employee's body remains on the same level as the hole, with only his foot or leg dropping down. Where the hole is large enough for an employee to fall through to the level below, § 1926.501(b)(4)(i) is the applicable standard.

*Sec'y of Labor v. Recchi America, Inc.—GLF Constr. Corp.*, 20 O.S.H. Cas. (BNA) 1297 (2003) (also found at 2003 WL 21397780 (O.S.H.R.C.)). *See also Sec'y of Labor v. Lancaster Enters., Inc.*, 19 O.S.H. Cas. (BNA) 1033 (2000) (also found at 2000 WL 1086715 (O.S.H.R.C.)) ("We note that § 1926.501(b)(4)(ii) ... refers to employees 'tripping in or stepping into or through holes,' whereas § 1926.501(b)(4)(i) refers to employees 'falling through holes.' "); *Sec'y of Labor v. MJP Constr. Co., Inc.*, 2000 WL 192809 (O.S.H.R.C.2000) (discussing violations of subsections 1926.501(b)(4)(i) and (ii) as distinct problems).

█ In the same connection, we heed the Supreme Court's reminder, that "informal [agency] interpretations [of agency rules] are ... entitled to some weight on judicial review." *Martin*, 499 U.S. at 157, 111 S.Ct. 1171 (citations omitted). One of these, a standard interpretation by the Secretary, explains as follows:

> This is in response to your September 4 and October 12[, 1998] faxed letters to the Occupation Safety and Health Administration (OSHA). You asked for clarification of the fall protection requirements when working in the vicinity of an open concrete elevator pit, which measures 6' X 8' and 4 feet deep. You further describe its location as "an open area of a construction site."
>
> The fall protection standard, at 29 CFR § 1926.500(b), defines a hole as "a gap or void 2 inches ... or more in its least dimension, in a floor, roof, or other walking/working surface." The standard has two requirements with respect to holes. First, § 1926.501(b)(4)(i) requires that employees be protected from falling through holes more than 6 feet by fall arrest systems, guardrails or covers. So, if a hole is more than 6 feet deep, one of these protection systems must be used.
>
> Second, § 1926.501(b)(4)(ii) requires that employees be protected from tripping or stepping into holes by placing covers over them. This provision does not specify a minimum depth for the requirement to apply.
>
> The first issue is whether the pit is a "hole." The pit that you describe is located in and surrounded by a floor, roof or other walking/working surface of a significantly larger dimension than the pit. This pit would be considered a hole under the standard. Since the fall distance is less than 6 feet, the applicable requirement is [§ ] 501(b)(4)(ii), which requires a cover to protect against the tripping/stepping into hazard. Alternatively, a guardrail could be used to prevent employee exposure to the tripping/stepping into hazard.

*Standard Interpretations: Clarification of fall protection requirements for open holes on a construction site (November 17, 1998)*, available at http://www.osha.gov (as of January 5, 2004).

All in all, we conclude the Director cited Kiewit under the correct safety regulation. The LIRAB was wrong in deciding that 29 C.F.R. § 1926.501(b)(4)(ii) does not apply to shallow holes at ground level. Kiewit argues that our deference, like the circuit court's, is nonetheless due to the LIRAB. As discussed above, however, the Supreme Court's

opinion in *Martin* suggests otherwise. At any rate, if, as we have determined, "the legislature[,]" through the rules promulgated by the department of labor and industrial relations, "has unambiguously spoken on the matter in question, then our inquiry ends." *Water Use,* 94 Hawai'i at 144, 9 P.3d at 456 (citation omitted).

## IV. Conclusion.

We vacate in part, affirm in part, and remand. The April 3, 2001 final judgment and the underlying February 26, 2001 decision and order of the circuit court are vacated insofar as they affirm the LIRAB's reversal of Citation 1, Item 1, but are otherwise affirmed. The circuit court shall remand to the LIRAB with instructions to decide the issues (1(a) and 1(b), quoted above) it left unresolved in the wake of its reversal.