Jessie Mae YELDER, on behalf of
herself and all others similarly
situated, Plaintiff,

v.

Andrew P. HORNSBY, Jr., Commission-
er of the Alabama Department of
Human Resources, Defendant.

Civ. A. No. 84–T–1271–N.

United States District Court,
M.D. Alabama, N.D.

July 20, 1987.

Lawrence F. Gardella, Legal Services
Corp. of Alabama, Inc., Montgomery, Ala.,
for plaintiff.

James E. Long, Lois Brasfield, Asst. At-
tys. Gen., State Dept. of Pensions & Sec.,
Montgomery, Ala., for defendant.

## MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

Jessie Mae Yelder, the plaintiff, has
brought this class-action lawsuit claiming
that the following policy of two interrelat-
ed Alabama programs, the Aid to Families
with Dependent Children (AFDC) program
and the Child Support and Establishment
of Paternity (CSEP) program, violates fed-
eral law: the state policy of automatically
terminating a family's right to continue to
receive AFDC benefits if the CSEP pro-

gram is able to collect from the family's absent parent just one child support payment that exceeds the family's AFDC grant by fifty dollars or more. Yelder has sued as defendant the Commissioner of the Alabama Department of Human Resources, the state official responsible for implementing the two programs.

For reasons that follow, the court concludes that the challenged policy violates federal law and that Yelder and the class she represents are thus entitled to appropriate relief.

## I.

The federal AFDC program is a cooperative program between state and federal governments to provide financial assistance to needy dependent children and those who live with and care for them. For states that elect to participate in the federal program and administer it locally, the federal government reimburses them for a portion of the funds they expend under their programs for care of needy children; in return, these states must operate their programs in compliance with applicable federal statutes and regulations. *See* Title IV–A of the Social Security Act of 1935, 42 U.S.C.A. §§ 601, *et seq.*

In 1975, in an effort to stem the increasing number of families forced to depend on AFDC benefits because absent parents failed to meet their child support obligations, Congress amended the Social Security Act to establish the CSEP program. *See* Title IV–D of the Social Security Act of 1935, 42 U.S.C.A. §§ 651, *et seq.* The purposes of the program include "enforcing the support obligations owed by absent parents to their children and the spouse (or former spouse) with whom such children are living, locating absent parents, establishing paternity, obtaining child and spousal support, and assuring that assistance in obtaining support will be available under this part to all children ... for whom such assistance is requested." 42 U.S.C.A. § 651. The CSEP program requires that all participating states provide CSEP services to their AFDC recipients. 42 U.S.C.A. § 654(4).

Under the federal AFDC and CSEP programs, an AFDC family must assign to the state its right to child support payments from an absent parent; the family may not directly receive such payments. 42 U.S.C.A. § 602(a)(26)(A); 45 C.F.R. §§ 232.11, 302.32(a). Whenever the CSEP program collects a child support payment from a family's absent parent, the program must inform the AFDC program of the payment, 45 C.F.R. § 302.32, and the AFDC program must then determine whether the family's AFDC benefits should be terminated effective the month following receipt of the payment. 45 C.F.R. § 302.32; *see also* 45 C.F.R. §§ 232.20, 206.10(a)(9), 233.33. Of course, any family whose benefits are terminated may later reapply for benefits.

If the AFDC program determines that the family's benefits should be terminated, the CSEP program must distribute the collected child support payment according to a federally mandated formula. First, the first $50.00 of child support collected in any given month must be paid to the family; second, the state reimburses itself for the AFDC assistance paid to the AFDC family during that month; third, any additional amounts up to the amount that the absent parent is obligated to pay by a court order are paid to the family; fourth, any amounts in excess of the amounts to be paid pursuant to the first three steps are used by the state to reimburse itself for past AFDC assistance received; and, fifth, once the state has received an amount large enough to reimburse itself for all the past AFDC assistance the family has received, any excess is paid to the family. 42 U.S.C.A. § 657(b); 45 C.F.R. § 302.51. Under the formula, therefore, most, if not all, of the collected payment will go to reimburse the AFDC program, unless the payment is very large; thus, for many, if not most, families whose benefits are terminated, they must look only to continued child support payments for help.

Alabama administers both the AFDC and CSEP programs through its Department of Human Resources. Under the challenged policy adopted by the Department, whenever the state CSEP program collects from a

family's absent parent a child support payment that exceeds the family's AFDC grant by fifty dollars or more, the state AFDC program must automatically terminate the family's right to continue to receive monthly benefits, beginning with the month immediately following receipt of the support payment, irrespective of the likelihood that payments will not be continued, or will be continued in amounts less than the first payment.

Jessie Mae Yelder and her family are participants in both the Alabama AFDC and CSEP programs. The Alabama Department of Human Resources has used the challenged policy to terminate her AFDC benefits several times. At the time this lawsuit was filed in 1984, Yelder's former husband was obligated to pay her $130.00 a month pursuant to a child support order; the payments under the child support order exceeded Ms. Yelder's monthly AFDC assistance of $118.00. If the child support payments had actually been made on a monthly basis, Ms. Yelder would not have been entitled to AFDC assistance. Mr. Yelder's payments were, however, sporadic and of varying amounts; Mr. Yelder paid $150.00 in January 1983, $30.00 in February of 1983, and $180.00 in December of 1983, $120.00 in January of 1984, and only a total of $90.00 between February 1 and May 31, 1984. During this time, according to Ms. Yelder, Mr. Yelder was unemployed.

Pursuant to the policy challenged in this lawsuit, the Alabama Department of Human Resources terminated Ms. Yelder's AFDC benefits three times between 1983 and 1984, even though it was apparent with each termination that Mr. Yelder would more than likely not continue, or even be able to continue, with his support payments. Furthermore, although Ms. Yelder was able each time to have her benefits restored, she and her family suffered greatly during the month or more they had to do without benefits. Because of the first termination, Ms. Yelder could not pay

the rent and she and her family were evicted; with the second termination, the family could not pay the gas bill and lost gas service; and, as a result of the third termination, the family lost water and electric service and was again threatened with eviction. Therefore, although under the challenged policy Yelder had to do without benefits only temporarily, the effects of the policy on the well-being of her family, and in particular her children, were severely crippling and were undoubtedly long standing if not permanent.

Ms. Yelder's distressing circumstances are typical of those of other Alabama AFDC recipients who receive sporadic child support payments. The court has therefore certified a plaintiff class of all past, present and future Alabama AFDC recipients "to whom child support is due." Order of December 21, 1984.

## II.

Yelder contends that the challenged policy violates federal regulation 45 C.F.R. § 233.33(a), which requires that the state AFDC program determine a family's continued AFDC eligibility "prospectively," that is, based on the program's "best estimate of income and circumstances which will exist in the month for which the assistance payment is made."[1] For several reasons, the court agrees with Yelder that the challenged policy violates § 233.33(a).

## A.

■ When a court is confronted with a state agency's interpretation and application of a federal regulation, the court must first consider whether the federal regulation clearly and unambiguously addresses the question at issue. If it does, then that is the end of the matter and the court must give effect to the unambiguous language of the regulation. If, however, the regulation is ambiguous or does not directly address the question at issue, the court does

---

1. § 233.33(a) provides:
   The State plan for AFDC shall provide that the State shall determine all factors of eligibility prospectively for all payment months. Thus, the State agency shall establish eligibility based on its best estimate of income and circumstances which will exist in the month for which the assistance payment is made.

not simply impose its own construction on the regulation; rather, the court should determine whether the federal agency that promulgated the regulation has interpreted the regulation; if so, whether the interpretation is a permissible construction of the regulation; and, if so, whether the state agency's interpretation comports with the federal agency's. But if there is no helpful interpretation by the federal agency, the court must then simply determine whether the state agency's interpretation is a permissible construction of the regulation. In other words, absent clear and unambiguous language in the federal regulation, a court must give deference to any reasonably acceptable interpretation by the federal agency or, in the absence of a federal interpretation, by the state agency. *Cf. Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–44, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1987) (discussing the standard by which a court should determine whether a federal agency's interpretation of a federal law is permissible); *United States v. Larionoff,* 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977) (discussing the standard by which a court should determine whether a federal agency's interpretation of its own regulation is permissible).

Here, the record establishes, first, that the language of the federal regulation at issue is clear and unambiguous and, second, that the policy challenged is impermissible under the regulation's clear language.

### B.

The Commissioner of the Alabama Department of Human Resources acknowledges that § 233.33(a) applies to instances where the CSEP program reports to the AFDC program that it has received from a family's absent parent a child support payment. The Commissioner therefore concedes that, in determining whether the family's AFDC benefits should be terminated, the AFDC program must, as § 233.33(a) requires, make a best estimate of what the income and circumstances of the family will be in the future. According to the Commissioner, this determination should be based on information received from, among other sources, the family; the information should include the family's current and past actual income and relevant circumstances, as well as the family's expectation, and reasons for its expectation, regarding whether and to what extent its income and relevant circumstances will remain the same or will change.[2] *See* 45 C.F.R. § 233.31(b)(1).[3]

■ The policy challenged here violates these requirements in a number of ways. First, although required to do so, the Commissioner does not consider all relevant information received from the family and other sources regarding what the family's income and circumstances are expected to be in the future, and, in particular, regarding whether the family's absent parent will, and is able to, continue making child support payments in the required amount in the future; instead, the Commissioner relies exclusively on the single fact that the CSEP program has collected one child support payment. With the challenged policy, the Commissioner has in effect replaced the requirements of § 233.33(a) and related regulations with the irrebuttable presumption that an absent parent who makes just one sufficiently high child support payment will continue making such payments in the future. The Commissioner's refusal to consider all information that may be submitted or reasonably available to him is a glaring violation of § 233.33(a) and related regulations.

---

**2.** *See* Defendant's Partial Answers to Plaintiff's First Interrogatories, No. 13, as contained in Plaintiff's Exhibit No. 13.

**3.** Section 233.33(a) in substance requires that the Commissioner determine continued eligibility by using 'prospective budgeting,' which is defined in § 233.31(b)(1) as follows:

"Prospective budgeting" means that the agency shall determine eligibility (and compute the amount of assistance for the first one or two months) based on its best estimate of income and circumstances which will exist in that month. This estimate shall be based on the agency's reasonable expectation and knowledge of current, past or future circumstances.

Second, the Commissioner does not in fact engage in any "best estimate" of a family's future income and circumstances. A "best estimate" requires that the Commissioner decide, at least, whether the absent parent will likely continue his payments, and in the same amount. For example, if the absent parent is unemployed and has no source of income, it would be unrealistic to assume that he will make, or is even capable of making, regular support payments. Indeed, according to Ms. Yelder, her husband's payments were sporadic and irregular because he did not have a job. By "automatically" terminating a family's AFDC benefits once the CSEP program receives a child support payment of a certain amount or higher, the Commissioner engages in no estimate at all, let alone a "best estimate," of the family's future income and circumstances.

Third, the policy violates the AFDC requirement that, when considering a family's eligibility for benefits, a state agency is limited to income and other resources that will be "actually available" during the month for which eligibility is being determined. Under this principle, a state agency must ensure that any income or resources considered must " 'actually exist,' be not 'fictitious' or 'imputed,' and 'be actually on hand or ready for use when it is needed,' " *Heckler v. Turner*, 470 U.S. 184, 200, 105 S.Ct. 1138, 1147, 54 L.Ed.2d 138 (1985); the purpose of the principle "is to prevent the States from relying on imputed or unrealizable sources of income artificially to depreciate a recipient's need." *Id.*, at 203, 105 S.Ct. at 1148. *See also Lewis v. Martin*, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970); *King v. Smith*, 392 U.S. 309, 319 n. 16, 88 S.Ct. 2128, 2134 n. 16, 20 L.Ed.2d 1118 (1968). The principle is currently incorporated in 45 C.F.R. § 233.-20(a)(3)(ii)(D), which requires that eligibility determinations be restricted to income and resources "available for current use."

The challenged policy's irrebuttable presumption that if an absent parent makes one child support payment he will make another of the same amount is completely incompatible with the "actual availability" principle. Because it is not based on any individual assessment of the likelihood that an absent parent who makes a support payment will make another of the same amount, and because it is not based on any individual assessment or estimate of what a family's actual income and circumstances will be in the future, the presumption is a "fiction." It fails completely to consider those individual circumstances where, for example, an absent parent who makes one child support payment has no steady employment or is unemployed or is even unemployable.

The Commissioner argues, nevertheless, that his policy is not unreasonable because a family that loses benefits may simply later reapply to have them reinstated retroactively. Additionally, as the Commissioner points out, the CSEP program's child support collection services are available to a family even after its AFDC benefits have been terminated. 42 U.S.C.A. § 657(c). This argument fails to address the fact that the Commissioner is not complying with federal law. This argument also fails to appreciate that the effects of even a temporary loss of benefits on a family, as demonstrated by the Yelder case, may be harsh and permanent.

The Commissioner has also pointed to part of the regulatory history of the AFDC and CSEP programs, which he claims supports his policy. The preamble to 45 C.F.R. § 232.20(b)(1), one of the regulations which addresses the treatment of child support, provides:

Comment: One commenter felt that § 232.20 should give more detail about the treatment of the support collection that causes ineligibility. The commenter also felt that the regulation should provide for situations where, (1) the support collections do no continue, (2) the support collections do not remain at the same level, and (3) the family's need changes.

Response: Section 232.20 provides IV-A [AFDC] State plan requirements for the treatment of reported support collections in determining eligibility for assistance. This regulation requires the IV-A [AFDC] agency to inform the IV-D

[CSEP] agency whenever a reported support collection causes ineligibility.

When the IV–D [CSEP] agency receives the report from the IV–A [AFDC] agency, it is responsible for any further action under § 302.32 and § 302.51 governing the treatment of the support collection that caused ineligibility. If the support collections do not remain at the same level, or the family's need changes, the family can reapply for assistance. 48 Fed.Reg. 28400 (1983). The Commissioner attempts to sift from this comment and response the conclusion that the regulations authorize automatic termination of a family's AFDC benefits without regard to the family's expected future income and circumstances. The court does not discern from the above comment and response a mandate to the states to disregard § 233.-33(a)'s requirements that the states base their eligibility determinations on an informed "best estimate" of each family's future income and circumstances; rather, the comment and response address what a state and AFDC recipient should do if the state's "best estimate" proves to be inaccurate.

### C.

■ Finally, Yelder asks that this court specifically set forth the methods the Commissioner should use to gather information to be used in determining a family's continued eligibility. The Commissioner strongly objects to such relief. The court sees no basis for ordering such relief at this time. The court assumes that in each case the Commissioner will act in good faith and will make an informed "best estimate" based on all reasonably available information, including that furnished by the AFDC family and that in the possession of the interrelated AFDC and CSEP programs.

### III.

In conclusion, the thrust of § 233.33(a) and related regulations is that a state agency determine a family's continued AFDC eligibility on an individualized basis. The agency must consider the individual circumstances of each family, as reflected in all relevant and available information about the family; and, based on this information, the agency must make a best estimate of the family's future actual income and circumstances. The state agency may not make this important and critical determination for a family based on assumptions and presumptions divorced from the expected actual income and circumstances for that family.

An appropriate judgment will be entered.

### JUDGMENT AND INJUNCTION

In accordance with the memorandum opinion entered this date, it is the ORDER, JUDGMENT, and DECREE of the court:

(1) That judgment be and it is hereby entered in favor of the plaintiff Jessie Mae Yelder and the plaintiff class and against defendant Commissioner of the Alabama Department of Human Resources;

(2) That it be and it is hereby DECLARED that the following policy of the Alabama Department of Human Resources violates federal law: the policy of automatically terminating a family's right to continue to receive AFDC benefits if the CSEP program is able to obtain from the family's absent parent just one child support payment that exceeds the family's AFDC grant by fifty dollars or more; and

(3) That defendant Commissioner be and he is hereby ENJOINED and RESTRAINED from further enforcement of said policy.

Furthermore, if plaintiff Yelder believes that she and the plaintiff class are entitled to additional relief, it is ORDERED:

(1) That the parties be and they are hereby DIRECTED to meet with each other within 21 days from the date of this judgment to attempt to agree upon such relief; and

(2) That plaintiff Yelder be and she is hereby allowed 28 days from the date of this order to file a request for additional relief should the parties be unable to agree upon such relief.

It is further ORDERED that costs be and they are hereby taxed against defend-

ant Commissioner, for which execution may issue.

The clerk of the court is DIRECTED to issue a writ of injunction.