**Electronically Filed
Intermediate Court of Appeals
29908
31-MAY-2011
09:07 AM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---o0o---

DIRECTOR, DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS,
Petitioner/Appellant-Appellant,
v.
PERMASTEELISA CLADDING TECHNOLOGIES, LTD.,
Defendant/Appellee-Appellee

NO. 29908

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 08-1-2667)

MAY 31, 2011

FOLEY AND FUJISE, JJ.;
NAKAMURA, C.J., CONCURRING SEPARATELY

OPINION OF THE COURT BY FOLEY, J.

In this secondary appeal of an administrative agency decision, Petitioner/Appellant-Appellant the Director of the Department of Labor and Industrial Relations (Director) appeals from the "Judgment on Decision and Order Affirming Hawaiʻi Labor Relations Board's Decision No. 24, Dated November 24, 2008" filed

on May 28, 2009 in the Circuit Court of the First Circuit[1] (circuit court). The circuit court entered judgment in favor of Respondent/Appellee-Appellee Permasteelisa Cladding Technologies, Ltd. (Permasteelisa) and Agency/Appellee-Appellee Hawai'i Labor Relations Board (HLRB) and against Director, pursuant to the court's May 28, 2009 "Decision and Order Affirming Hawai'i Labor Relations Board's Decision No. 24, Dated November 24, 2008."

On appeal, Director contends:

(1) The circuit court erred in affirming HLRB's conclusion that Permasteelisa complied with the standard set out in 29 C.F.R. § 1926.501(b)(1) (Hawaii Administrative Rules (HAR) Chapter 12-121.2). In connection therewith, Director contends that in HLRB's "Findings of Fact, Conclusions of Law, and Order" issued November 24, 2008, the portion of Finding of Fact (FOF) 33 stating "[t]he Board accepts Flippo's[2] opinion, that [Permasteelisa] provided protection for [Frank Montayre, Jr. (Montayre)] from fall hazards by providing him a functional personal fall arrest system and thereby complied with 29 C.F.R. § 1926.501" is clearly erroneous and Conclusion of Law (COL) 8 is wrong.

(2) Permasteelisa did not plead or present any evidence of an affirmative defense and, therefore, cannot now raise the defense to negate the violation.

I.

A. Factual Background

Hawaii Dredging Construction Company subcontracted with Permasteelisa to design and install the exterior facade, consisting of aluminum frame and glass, of the East and West Towers of the Moana Pacific Condominium project (the project). On March 14, 2007, Montayre, an ironworker employed by

---

[1] The Honorable Eden Elizabeth Hifo presided.

[2] Charles Flippo was a safety compliance officer with Hawaii Occupational Safety and Health Division who investigated Montayer's fall.

Permasteelisa, while briefly working alone, fell to his death from the 46th floor of the East Tower. Montayre and his work partner had just taken a fifteen-minute break on another floor. When Montayre left the break area, he neglected to take his personal fall arrest protection equipment, even though he was going to work in a condominium unit on the 46th floor that required the use of a fall protection system. Not all of the glass panels had been installed on the lanai[3] of the unit, which presented a danger that a worker could fall.

Safety standards required a fall protection system to be utilized when an employee was on a working surface "with an unprotected side or edge which is 6 feet (1.8 m) or more above a lower level." 29 C.F.R. § 1926.501(b)(1). Permasteelisa had provided Montayre with a personal fall arrest system[4] and installed a claw anchor hole in the floor of the unit, into which a worker could insert a retractable anchor bolt attached to his personal fall arrest system. Montayre had been trained and directed by Permasteelisa to use this system. The fall arrest system would engage in the event a worker fell and prevent the worker from falling to his death. There is nothing in the record to indicate that Permasteelisa was on notice that Montayre had not used or would not use the fall arrest system as trained and directed by Permasteelisa.

B.   Procedural Background

On August 8, 2007, the Director, through the Hawaii Occupational Safety and Health Division (HIOSH), issued a Citation and Notification of Penalty to Permasteelisa for violations of the Hawaii Occupational Safety and Health Law,

---

[3] In Hawaiian, lanai means a porch, veranda, or balcony. Mary Kawena Pukui & Samuel H. Elbert, Hawaiian Dictionary at 193 (1986).

[4] A personal fall arrest system is defined as "a system used to arrest an employee in a fall from a working level. It consists of an anchorage, connectors, a body belt or body harness and may include a lanyard, deceleration device, lifeline, or suitable combinations of these." 29 C.F.R. § 1926.500(b)

Hawaii Revised Statutes (HRS) Chapter 396. Specifically, the Director cited Permasteelisa for violations of fall protection standards 29 C.F.R. § 1926.501(b)(1) (Citation 1, Item 1); 29 C.F.R. § 1926.502(a)(2) (Citation 1, Item 2a); 29 C.F.R. § 1926.502(b)(2) (Citation 1, Item 2b); and 29 C.F.R. § 1926.503(b)(1) (Citation 2, Item 1) -- all incorporated from the federal regulations under HAR Chapter 12-121.2.1.

On August 31, 2007, Permasteelisa contested the citations. Director forwarded the contested case to HLRB and the Department of the Attorney General.

HLRB heard the case on February 12 and 13, 2008 and issued its "Decision No. 24 Findings of Facts, Conclusions of Law, and Order" on November 24, 2008. HLRB vacated Citation 1, Items 1, 2a, and 2b, and affirmed Citation 2, Item 1. Director filed a motion for reconsideration. On December 17, 2008, HLRB denied the motion, with the exception of a correction on page 2 to language in the introduction of the decision.

On December 26, 2008, Director filed an appeal to the circuit court. The circuit court, after oral argument, affirmed HLRB's decision and filed a judgment on May 28, 2009. Director timely appealed.

## II.

### A. Secondary Appeal

> "'Review of a decision made by a court upon its review of an administrative decision is a secondary appeal. The standard of review is one in which [the appellate] court must determine whether the court under review was right or wrong in its decision.'" *Leslie v. Bd. of Appeals of County of Hawaii*, 109 Hawai'i 384, 391, 126 P.3d 1071, 1078 (2006) (quoting *Lanai Co., Inc. v. Land Use Comm'n*, 105 Hawai'i 296, 306-07, 97 P.3d 372, 382-83 (2004) (other citation omitted)). The standards as set forth in HRS § 91-14(g) (1993) are applied to the agency's decision. *Ka Pa'akai O Ka'aina v. Land Use Comm'n*, 94 Hawai'i 31, 40, 7 P.3d 1068, 1077 (2000). HRS § 91-14(g) provides:
>
> > (g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been

prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1)    In violation of constitutional or statutory provisions; or

(2)    In excess of the statutory authority or jurisdiction of the agency; or

(3)    Made upon unlawful procedure; or

(4)    Affected by other error of law; or

(5)    Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6)    Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

"'Under HRS § 91-14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects under subsection (3); findings of fact under subsection (5); and an agency's exercise of discretion under subsection (6).'" *Sierra Club v. Office of Planning, State of Hawai'i*, 109 Hawai'i 411, 414, 126 P.3d 1098, 1101 (2006) (quoting *In re Hawaiian Elec. Co.*, 81 Hawai'i 459, 465, 918 P.2d 561, 567 (1996) (other citation omitted)).

"'An agency's findings are not clearly erroneous and will be upheld if supported by reliable, probative and substantial evidence unless the reviewing court is left with a firm and definite conviction that a mistake has been made.'" *Poe v. Hawai'i Labor Relations Bd.*, 105 Hawai'i 97, 100, 94 P.3d 652, 655 (2004) (quoting *Kilauea Neighborhood Ass'n v. Land Use Comm'n*, 7 Haw. App. 227, 229-30, 751 P.2d 1031, 1034 (1988)). "'The courts may freely review an agency's conclusions of law.'" *Lanai Co.*, 105 Hawai'i at 307, 97 P.3d at 383 (quoting *Dole Hawaii Div.-Castle & Cooke, Inc. v. Ramil*, 71 Haw. 419, 424, 794 P.2d 1115, 1118 (1990) (other citation omitted)). "Abuse is apparent when the discretion exercised clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant." *Kimura v. Kamalo*, 106 Hawai'i 501, 507, 107 P.3d 430, 436 (2005) (internal quotation marks and citation omitted).

Brescia v. North Shore Ohana, 115 Hawai'i 477, 491-92, 168 P.3d 929, 943-44 (2007) (brackets in original omitted).

### B.    Deference to Administrative Agency Decision

In determining whether an agency determination should be given deference, the standard to be applied is as follows:

[W]hen reviewing a determination of an administrative agency, we first decide whether the legislature granted the agency discretion to make the

> determination being reviewed.  If the legislature has granted the agency discretion over a particular matter, then we review the agency's action pursuant to the deferential abuse of discretion standard (bearing in mind that the legislature determines the boundaries of that discretion).  If the legislature has not granted the agency discretion over a particular matter, then the agency's conclusions are subject to de novo review.
>
> *Paul's Electrical Service, Inc. v. Befitel*, 104 Hawai'i 412, 419-20, 91 P.3d 494, 501-[02] (2004).

Olelo:  The Corp. for Cmty. Television v. Office of Info. Practices, 116 Hawai'i 337, 344, 173 P.3d 484, 491 (2007).

"[I]n deference to the administrative agency's expertise and experience in its particular field, the courts should not substitute their own judgment for that of the administrative agency where mixed questions of fact and law are presented.  This is particularly true where the law to be applied is not a statute but an administrative rule promulgated by the same agency interpreting it." Camara v. Agsalud, 67 Haw. 212, 216, 685 P.2d 794, 797 (1984) (citation omitted).

Where an administrative agency has adopted wholesale the relevant federal regulations into its administrative rules, Dir., Dep't of Labor & Indus. Relations v. Kiewit Pac. Co., 104 Hawai'i 22, 34, 84 P.3d 530, 542 (App. 2004), "absent clear and unambiguous language in the federal regulation, a court must give deference to any reasonably acceptable interpretation by the federal agency or, in the absence of a federal interpretation, by the state agency." Yelder v. Hornsby, 666 F. Supp. 1518, 1521 (M.D. Ala. 1987).

## III.

To establish a violation of an occupational safety standard, Director must prove by a preponderance of the evidence[5] that "(1) the [cited] standard applies, (2) there was a failure

---

[5]  HRS § 91-10(5) (Supp. 2010) provides:  "Except as otherwise provided by law, the party initiating the proceeding shall have the burden of proof, including the burden of producing evidence as well as the burden of persuasion.  The degree or quantum of proof shall be a preponderance of the evidence."

to comply with the cited standard, (3) an employee had access to the violative condition, and (4) the employer knew or should have known of the condition with the exercise of due diligence." Dir., Dep't of Labor & Indus. Relations v. Maryl Pac. Constructors, Inc., Case No. OSAB 2001-18, 2002 WL 31757252, at *6.

After the administrative hearing, HLRB found in FOF 33 of its Decision No. 24 Findings of Fact, Conclusions of Law, and Order that Permasteelisa had complied with the cited standard and utilized a personal fall arrest system:

> With respect to Citation 1, Item 1, alleging a violation of 29 CFR § 1926.501(b)(1), after reviewing the record, the Board finds that [Permasteelisa] utilized a personal fall arrest system to protect its workers against fall hazards on the high rise Moana Pacific project. On March 14, 2007, Montayre, a veteran iron worker and working foreman, fell to his death while working on the 46th floor. The lanai of the unit Montayre was working on had three of four glass panels missing from the mid-railing leaving the balcony's side unguarded. An anchor hole had been drilled into the floor of the unit to insert the anchor claw for the fall protection equipment and upon examination by the HIOSH compliance officer, Montayre's equipment was fully functional. Tragically, Montayre was not wearing his personal fall protection equipment provided by [Permasteelisa] when he fell. The Board accepts Flippo's opinion, that [Permasteelisa] provided protection for Montayre from fall hazards by providing him a functional personal fall arrest system and thereby complied with 29 CFR § 1926.501. Chun[6] testified that under 29 CFR [§] 1926.502(a)(2) which states that the employer shall provide and install all fall protection systems required by this subpart for the employee, it was his opinion that someone from the employer was required to insert Montayre's anchor into the hole for him. Lupian[7] testified that he would install his own anchor because he didn't want to trust someone else with his life. Although the citing compliance officer testified that he expected [Permasteelisa] to insert the anchor in the hole in order to comply with the HIOSH standards, the testimony of witnesses indicated that each worker installs his own anchor to engage his fall protection equipment.

---

[6] Clayton Chun took over the investigation after Flippo went on medical leave.

[7] Jose Lupian was Permasteelisa's project manager.

Based on this finding, HLRB then concluded in COL 8 that Permasteelisa had complied with the standard set forth in 29 C.F.R. § 1926.501(b)(1):

> Based upon the record, the Board finds that [Permasteelisa] complied with the standard. [Permasteelisa] had a personal fall arrest system being utilized at the Moana Pacific project at the time to protect its employees from fall hazards and provided a working personal fall protection system to Montayre. As a working foreman with a reputation of being safety conscious for himself and his men, [Permasteelisa] had no reason to expect that Montayre would proceed to work on the lanai without his fall protection equipment. HIOSH's expectation that [Permasteelisa] insert the anchor for its workers' fall protection is unreasonable. Based upon the record, the Board concludes that [Permasteelisa] did not violate 29 CFR § 1926.501(b)(1).

HLRB's decision should be upheld "if supported by reliable, probative and substantial evidence unless the reviewing court is left with a firm and definite conviction that a mistake has been made." Poe v. Hawai'i Labor Relations Bd., 105 Hawai'i 97, 100, 94 P.3d 652, 655 (2004) (internal quotation marks and citation omitted). In the instant case, the circuit court found there was "reliable, probative, and substantial evidence in the record to sustain the facts which were established in the Decision and Order appealed from; and that given those facts and circumstances[,] . . . there is no error of law and, therefore, [the circuit court] affirms the decision appealed from."

Because this case presents a mixed question of law and fact, the appellate court gives deference to the agency's expertise and experience. Igawa v. Koa House Rest., 97 Hawai'i 402, 406, 38 P.3d 570, 574 (2001). Deference is "especially due in the discrete context of an agency's interpretation of its own administrative rules," Kiewit Pac., 104 Hawai'i at 29, 84 P.3d at 537 (footnote omitted), reasoning that the agency acquires expertise in the process of promulgating and enforcing the rules. Id. at 32, 84 P.3d at 540.

However, here, it is questionable what expertise was acquired in the promulgation of the regulations because HAR § 12-

121.2-1 is merely the wholesale adoption by the agency of the relevant federal regulations:

> §12-121.2-1 **Incorporation of federal standard.** Title 29, Code of Federal Regulations, Subpart M, entitled "Fall Protection," published by the Office of the Federal Register, National Archives and Records Administration, on August 9, 1994; and the amendments published on January 26, 1995; August 2, 1995; and January 18, 2001, are made a part of this chapter.

Nevertheless, deference should be given to the agency's interpretation of the regulatory scheme "so long as the department is legislatively delegated the franchise of promulgating the pertinent regulations, and acquires relevant expertise in enforcing them." Kiewit Pac., 104 Hawaiʻi at 34, 84 P.3d at 542.

The relationship between Director and HLRB presents a unique question as to which agency actor is owed deference. "Under most regulatory schemes, rulemaking, enforcement, and adjudicative powers are combined in a single administrative authority." Martin v. Occupational Safety & Health Review Comm'n, 499 U.S. 144, 151, 111 S. Ct. 1171, 1176 (1991). But here, the roles of Director and HLRB, modeled after the roles of the federal Secretary of Labor (Secretary) and the Occupational Safety and Health Review Commission (Commission), id. at 147, 111 S. Ct. at 1174, create a split authority between the two actors. Id. at 151, 111 S. Ct. at 1176. Under the Occupational Safety and Health Act of 1970 (OSH Act), enforcement and rulemaking authority is granted to the Secretary, while adjudicative authority is granted to the Commission. Willy v. Admin. Review Bd., 423 F.3d 483, 493-94 (5th Cir. 2005).

Where "two functionally -- but not formally -- separate agencies vie over the interpretation of their occupational safety and health regulations, one agency generally charged with promulgation and enforcement and the other agency generally charged with adjudication," we are faced with a "split

enforcement" structure and must determine to whom deference is owed. Kiewit Pac., 104 Hawai'i at 30-31, 84 P.3d at 538-39.

In Hawaii, enforcement and rulemaking authority is granted to Director, and adjudicative authority is granted to HLRB. HRS §§ 396-4 (Supp. 2010) and 396-11 (1993). Because this "split enforcement" structure is modeled after the structure in the federal OSH Act, we look "to the interpretations of analogous federal laws by the federal courts for guidance." French v. Hawaii Pizza Hut, Inc., 105 Hawai'i 462, 467, 99 P.3d 1046, 1051 (2004) (internal quotation marks and citation omitted).

In Martin, the United States Supreme Court considered "whether a reviewing court should defer to the Secretary or to the Commission when these actors furnish reasonable but conflicting interpretations of an ambiguous regulation under the OSH Act." Martin, 499 U.S. at 150, 111 S. Ct. at 1175 (footnote omitted). The Supreme Court held that because the OSH Act granted the Secretary the authority "to promulgate and to enforce national health and safety standards," courts should defer to the Secretary's, rather than the Commissioner's, interpretation of the regulations. Id. at 152, 111 S. Ct. at 1176. The Court reasoned:

> [T]he power to render authoritative interpretations of OSH Act regulations is a "necessary adjunct" of the Secretary's powers to promulgate and to enforce national health and safety standards. The Secretary enjoys readily identifiable structural advantages over the Commission in rendering authoritative interpretations of OSH Act regulations. Because the Secretary promulgates these standards, the Secretary is in a better position than is the Commission to reconstruct the purpose of the regulations in question. Moreover, by virtue of the Secretary's statutory role as enforcer, the Secretary comes into contact with a much greater number of regulatory problems than does the Commission, which encounters only those regulatory episodes resulting in contested citations. Consequently, the Secretary is more likely to develop the expertise relevant to assessing the effect of a particular regulatory interpretation. Because historical familiarity and policymaking expertise account in the first instance for the presumption that Congress delegates interpretive lawmaking power to the agency rather than to the reviewing court, we presume here that Congress intended to invest interpretive power in the administrative actor in the best position to develop these attributes.

Martin, 499 U.S. at 152-53, 111 S. Ct. at 1176-77 (citations omitted).

The Supreme Court stressed the narrowness of its ruling, noting that it had based its conclusions on Congress's apparent intent not to preclude the Secretary from interpreting OSH Act regulations. Martin, 499 U.S. at 157-58, 111 S. Ct. at 1179. At the same time, the Court emphasized that "the reviewing court should defer to the Secretary only if the Secretary's interpretation is reasonable. The Secretary's interpretation of an ambiguous regulation is subject to the same standard of substantive review as any other exercise of delegated lawmaking power." Id. at 158, 111 S. Ct. at 1180.

This court has followed Martin and deferred to the Director when the Director and the review board offered conflicting interpretations of an ambiguous regulation. Kiewit Pac., 104 Hawai'i at 36-37, 84 P.3d at 544-45. However, "[i]f an administrative rule's language is unambiguous, and its literal application is neither inconsistent with the policies of the statute the rule implements nor produces an absurd or unjust result, courts enforce the rule's plain meaning." Int'l Bhd. of Elec. Workers, Local 1357, v. Hawaiian Tel. Co., 68 Haw. 316, 323, 713 P.2d 943, 950 (1986).

Therefore, to determine if judicial deference to Director applies in the instant case, we must determine (a) if the regulatory language in question is ambiguous and (b) if the language is ambiguous, is Director's interpretation reasonable. An interpretation is reasonable if it "sensibly conforms to the purpose and wording of the regulations, Northern Indiana Pub. Serv. Co. v. Porter County Chapter of Izaak Walton League of America, Inc., 423 U.S. 12, 15, 96 S. Ct. 172, 173 . . . (1975)." Kiewit Pac., 104 Hawai'i at 32, 84 P.3d at 540 (quoting Martin, 499 U.S. at 151, 111 S. Ct. at 1176). Furthermore, "the agency's decision must be consistent with the legislative purpose." Camara, 67 Haw. at 216, 685 P.2d at 797.

As previously explained, the federal fall protection standards set forth in 29 C.F.R. § 1926, Subpart M, are incorporated wholesale into HAR. HAR § 12-121.2-1. The subsections of 29 C.F.R. applicable to this discussion are §§ 1926.500, 1926.501(a)(1), and 1926.501(b)(1).

Section 1926.500 sets forth the scope of the fall protection standards, stating that "[s]ection 1926.501 sets forth those workplaces, conditions, operations, and circumstances for which fall protection shall be provided," 29 C.F.R. §§ 1926.500(a)(2), and "[s]ection 1926.502 sets forth the requirements for the installation, construction, and proper use of fall protection required by part 1926," 29 C.F.R. § 1926.500(a)(3).

Section 1926.501(a)(1) states: "This section sets forth requirements for employers to provide fall protection systems. All fall protection required by this section shall conform to the criteria set forth in § 1926.502 of this subpart."

Section § 1926.501(b)(1) states:

> Unprotected sides and edges. Each employee on a walking/working surface (horizontal and vertical surface) with an unprotected side or edge which is 6 feet (1.8 m) or more above a lower level shall be protected from falling by the use of guardrail systems, safety net systems, or personal fall arrest systems.

(Emphasis added.)

At the heart of the discussion is the meaning of the words "provide" and "use." Director argues that "the use" in § 1926.501(b)(1) means the employer has not met the standard unless the employee is actually using the personal fall arrest system that the employer provided. Permasteelisa contends "the use" in this context directs the employer to "use," in the sense of "provide," one of the three options: the guardrail system, the safety net system, or the personal fall arrest system.

Section 1926.501 is titled "Duty to have fall protection." Under § 1926.501(a), the regulation states specifically: "This section sets forth requirements for

employers to provide fall protection systems." Section 1926.501(b)(1) requires that an employee on a working surface with an unprotected side or edge six feet or more above a lower level "shall be protected from falling by the use of guardrail systems, safety net systems, or personal fall arrest systems." The guardrail or safety net systems are static systems installed by the employer, while the personal fall arrest protection system involves equipment provided to and used by the employee as needed.

Only under § 1926.501(b) does the word "use" appear; elsewhere in the fall protection system regulations, the word "provide" is the operative word. Nowhere does the regulation state that the employer shall ensure the use of the personal fall arrest system by inserting the anchor for the employee rather than training and directing the employee to insert the anchor, as was the case here.

The OSH Act should not be read as a strict liability statute; "the mere fact that violative conduct occurred is not, of itself sufficient to establish employer liability." W.G. Yates & Sons Constr. Co. v. Occupational Safety & Health Review Comm'n, 459 F.3d 604, 609 & n.8 (5th Cir. 2006) (employer not liable where employee's violative conduct of working without the required fall protection gear was not reasonably foreseeable). The OSH Act provides that "employers and employees have separate but dependent responsibilities . . . with respect to achieving safe . . . working conditions." 29 U.S.C. § 651(b)(2). Employers "shall furnish . . . a place of employment which [is] free from recognized hazards." 29 U.S.C. § 654(a)(1). But also, "[e]ach employee shall comply with occupational safety and health standards and all rules, regulations, and orders . . . which are applicable to [the employee's] own actions and conduct." 29 U.S.C. § 654(b); HAR § 12-51-1. In the instant case, Montayre did not insert the anchor of his personal fall arrest system as he had been trained and directed to do by Permasteelisa.

When 29 C.F.R. § 1926.501(b) is read in context, the language of the regulation does not appear to be ambiguous and clearly does not require the employer to ensure the use of the fall protection arrest system by inserting the anchor for the employee. Permasteelisa complied with § 1926.501(b) when it provided a fall protection system with training and direction in its use.

IV.

Therefore, the "Judgment on Decision and Order Affirming Hawai'i Labor Relations Board's Decision No. 24, Dated November 24, 2008" filed on May 28, 2009 in the Circuit Court of the First Circuit is affirmed.

On the briefs:

Frances E.H. Lum and
Herbert B.K. Lau,
Deputy Attorneys General,
for Petitioner/Appellant-
Appellant.

James C. McWhinnie
Tred R. Eyerly
(Damon Key Leong Kupchak
Hastert)
Douglas M. Poulin (admitted
pro hac vice)
(Pepe & Hazard LLP)
for Respondent/Appellee-
Appellee.

Valri Lei Kunimoto
for Hawaii Labor Relations
Board, Agency/Appellee-
Appellee.

14