**Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000826
06-JAN-2021
08:15 AM
Dkt. 54 MO**

NO. CAAP-16-0000826

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


IES RESIDENTIAL, INC.,
Appellant-Appellant
v.
DIRECTOR, DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS,
Appellee-Appellee


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 16-1-0385)


MEMORANDUM OPINION
(By: Ginoza, Chief Judge, Leonard and Nakasone, JJ.)


In this secondary agency appeal, Appellant-Appellant IES Residential, Inc. (**IES**) appeals from the November 7, 2016 Circuit Court of the First Circuit[1] (**circuit court**) Final Judgment in favor of Appellee-Appellee Director, Department of Labor and Industrial Relations (**Director**), and against IES, pursuant to the circuit court's Order Affirming Hawaii Labor Relations Board's Decision Dated February 3, 2016 (**Order**), and the Hawaii Labor Relations Board's (**Board**) Findings of Fact, Conclusions of Law and Decision and Order Dated February 3, 2016 (**Board Decision**).

On appeal, IES contends that the circuit court erred in affirming the Board Decision to uphold a Hawaii Occupational Safety and Health Division (**HIOSH**) citation against IES for violating Fall Protection requirements, by (1) failing to define "supervisor," (2) deferring to the Board's determination that IES

---

[1]     The Honorable Rhonda A. Nishimura presided.

employee Peter Lee (**Lee**) acted in a supervisory capacity and imputing Lee's knowledge to IES without an evidentiary basis, (3) failing to address and relying on the Board's "numerous misstatements of the record,"[2] (4) deferring to the Board's "misapplication" of the employee misconduct defense, and (5) holding IES "strictly liable" for the "unforeseeable misconduct of rogue employees."

For the reasons discussed below, we affirm.

## I.  Background

On December 14, 2012, HIOSH inspectors observed four IES employees[3] installing a photovoltaic system on a roof 18 feet above ground without being properly secured in a personal fall arrest system.  HIOSH inspectors conducted an inspection with Lee, who presented himself as the "foreman."[4]

IES's fall protection policy, also called the 100% tie off rule, requires that employees tie off to a fall arrest system every time they are on a roof more than six feet above ground. IES's policy states that violations "will result in immediate suspension or termination of employment."  IES did not suspend or terminate the four employees, contrary to its written disciplinary policy.

As a result of the violation, on April 3, 2013, HIOSH issued a citation for a "serious" violation of 29 Code of Federal Regulations (CFR) § 1926.501(b)(13),[5] and a penalty of $825.00.

---

[2]      IES's third point of error does not set forth the "numerous misstatements of the record" that IES complains of, as required by Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(b)(4).  Rule 28(b)(4)(ii) and (iii) require that a point of error identify where in the record the alleged error occurred, where it was objected to, or the manner in which the alleged error was brought to the attention of the lower court.  Accordingly, we will not address this point of error.  See HRAP Rule 28(b)(4)("Points not presented in accordance with this section will be disregarded[.]").

[3]      The four IES employees at the job site were Joshua Like (**Like**), Nicholas Kam (**Kam**), Christian Bernard (**Bernard**), and Lee.

[4]      At the December 5, 2013 Board hearing, HIOSH inspector Timothy Scalzone testified that Lee identified himself as the "foreman."

[5]      29 CFR § 1926.501(b)(13) provides,

(continued...)

IES contested the citation, and the Board conducted an evidentiary hearing on December 5 and 12, 2013.  The following witnesses testified at the Board hearing:  (1) HIOSH compliance officer Timothy Scalzone (**Scalzone**), (2) IES's Hawaiʻi division manager Daniel Marsh (**Marsh**), (3) IES's Hawaiʻi division assistant manager Christopher Woytus (**Woytus**), (4) Occupational Safety and Health Act (**OSHA**) employer outreach trainer James Johnson (**Johnson**), and (5) IES's Vice President of Safety and Operations James Allen (**Allen**).  Following the evidentiary hearing, the Board affirmed the citation and the penalty in the Board Decision issued on February 3, 2016.  IES appealed to the circuit court, which affirmed the Board's Decision, following a hearing.

## II.  Standard of Review

> Appellate court review of a circuit court's review of an administrative decision is a secondary appeal.  The standard of review is one in which this court must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in HRS § 91-14(g) (1993) to the agency's decision.

Kilakila ʻO Haleakalā v. Bd. of Land & Nat. Res., 138 Hawaiʻi 383, 395-96, 382 P.3d 195, 207-08 (2016) (internal quotation marks and citations omitted).  Hawaiʻi Revised Statutes ("HRS") § 91-14(g)(2012) provides:

> Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
> (1)     In violation of constitutional or statutory provisions; or
> (2)     In excess of the statutory authority or jurisdiction of the agency; or

---

[5](...continued)
Residential construction.  Each employee engaged in residential construction activities 6 feet (1.8m) or more above lower levels shall be protected by guardrail systems, safety net system, or personal fall arrest system unless another provision in paragraph (b) of this section provides for an alternative fall protection measure . . . .

(3)    Made upon unlawful procedure; or
(4)    Affected by other error of law; or
(5)    Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
(6)    Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

"Under HRS § 91-14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects are reviewable under subsection (3); findings of fact are reviewable under subsection (5); and an agency's exercise of discretion is reviewable under subsection (6)." Kilakila, 138 Hawaiʻi at 396, 382 P.3d at 208 (internal quotation marks and citations omitted). Under the clearly erroneous standard, the appellate court must sustain the findings of fact "unless the court is left with a firm and definite conviction that a mistake has been made." Bumanglag v. Oahu Sugar Co., Ltd., 78 Hawaiʻi 275, 279, 892 P.2d 468, 472 (1995) (block format and citation omitted).

"Pursuant to HRS § 91-14(g) an agency's conclusions of law are reviewed de novo. A conclusion of law that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the conclusion is dependent upon the facts and circumstances of the particular case." Kilakila, 138 Hawaiʻi at 396, 382 P.3d at 208 (internal quotation marks and citations omitted). "Where both mixed questions of fact and law are presented, deference will be given to the agency's expertise and experience in the particular field and the court should not substitute its own judgment for that of the agency." Dole Hawaii Div.-Castle & Cooke, Inc. v. Ramil, 71 Haw. 419, 424, 794 P.2d 1115, 1118 (1990) (citation omitted).

## III.  Discussion

In the first and second points of error, IES contends that the circuit court erred in failing to define the term "supervisor," in deferring to the Board Decision that Lee acted

in a supervisory capacity, and by imputing Lee's knowledge to IES without an evidentiary basis.

To establish an occupational safety violation, there are four elements that the Director must prove by a preponderance of the evidence: "(1) the cited standard applies, (2) there was a failure to comply with the cited standard, (3) an employee had access to the violative condition, and (4) the employer knew or should have known of the condition with the exercise of due diligence." Dir. Dep't of Labor & Indus. Relations v. Permasteelisa Cladding Technologies, Ltd., 125 Hawaiʻi 223, 227, 257 P.3d 236, 240 (App. 2011)(quoting Dir. Dep't Labor & Indus. Relations v. Maryl Pac. Constructors, Inc., OSAB 2001-18, 2002 WL 31757252, at *6 (June 13, 2002)). IES challenges the fourth element, claiming that while Lee was a "lead man," Lee was not a "supervisor" for purposes of imputing his knowledge to IES.

The Board Decision stated in pertinent part,

> 4. The employer knew or should have known of the condition with the exercise of due diligence.
>
> Lee, the project "lead" at the Alewa Work Site, admitted to [HIOSH compliance officer] S[c]alzone that the four men should have been tied-off. This Board has applied the well-settled federal OSHA precedent that the actual knowledge of a supervisory or management person can be imputed to the employer. Director v. Dorvin D. Leis Co., Inc., Board Case No. OSH 2013-28, Order No. 582 (2014) (*citing* A.P. O'Horo Company, Inc., 14 BNA OSHC 2004, 2007 (No. 85-369 1991) (A.P. O'Horo); Dover Elevator Company, Inc., 16 BNA OSHC 1281 (No. 91-862 1993). In addition, all four men on the roof on December 14, 2012 (Kam, Bernard, Like and Lee) admitted to Woytus that they knew they were violating [IES]'s Fall Protection Policy which included a 100% tie-off rule applicable to the conditions (18 feet above the ground) at the Alewa Work Site. It is clear that [IES] and its workers knew of the dangers of working on a roof that was 18 feet above the ground.
>
> Thus, the Board finds that the Director has met its burden of proving by a preponderance of the evidence that [IES] knew or should have known of the hazardous condition with the exercise of due diligence . . . .

(Footnote omitted)[6] (Emphasis and italics in original.)  In its review of the Board Decision, the circuit court ruled, "With regard to the knowledge element the court accepts the Labor Board's determination that Lee acted in a supervisory capacity and his knowledge could be imputed to [IES] to establish the knowledge element of [Director's] prima facie case."

The Board's determination as to this issue is a mixed question of fact and law.  Where mixed questions of fact and law are presented, "deference will be given to the agency's expertise and experience in the particular field[.]"  Dole Hawaii, 71 Haw. at 424, 794 P.2d at 1118 (citation omitted).  IES managers Woytus and Marsh testified before the Board that Lee, as the "lead man," was responsible for ensuring that the workers followed safety procedures at the work site.  The Board Decision noted that Lee's position as "lead man" at the work site was not disputed by IES, and that Johnson, the fall protection trainer, testified that IES designated a "lead man" for every installation job "whose responsibility was to identify safety concerns and to monitor safety compliance."  HIOSH inspector Scalzone testified that Lee informed him that he had the authority to "order a worker to tie off if [the worker] was not tied off."  IES Vice President Allen testified that Lee's resume indicated that Lee received training as a competent person in fall protection and "the competent person on the project has the ability to stop work at any time."  Allen also testified that as the lead man, Lee was responsible for safety at the job site and could stop an individual from working if that individual was in violation of the fall protection rule.  IES assistant manager Woytus testified that Lee was responsible for understanding that the employees had to properly wear and connect all fall protection equipment, and that every employee had to comply with the fall protection requirements.  IES manager Marsh testified that the lead man has

---

[6]     In the footnote, the Board explained that because the state structure is modeled after the federal OSHA, citing Permasteelisa, 125 Hawaiʻi at 228, 257 P.3d at 241, it looked to interpretation of the parallel federal law for guidance.

the "ultimate responsibility to make sure that everyone stays compliant on the job site."

Regardless of IES's characterization of Lee as a "lead man," rather than a "supervisor," the record contains substantial evidence to support the Board's determination that Lee acted in a supervisory capacity and to impute Lee's knowledge to IES. See HRS § 91-14(g)(5). IES's argument that a definition of "supervisor," was required, is without merit. The circuit court was correct in affirming the Board's determination that Lee acted in a supervisory capacity and his knowledge could be imputed to IES to establish that IES knew or should have known of the hazardous condition with the exercise of due diligence. See Kilakila, 138 Hawaiʻi at 395, 382 P.3d at 207.

In the fourth point of error, IES contends that the circuit court erred in deferring to the Board's "misapplication" of the employee misconduct defense. IES claims that it was entitled to the affirmative defense of employee misconduct, which requires that the employer establish that,

> (1) the employer has established work rules designed to prevent the violation; (2) it has adequately communicated these rules to its employees; (3) it has taken steps to detect and correct violations, especially if there were incidents of prior non-compliance; and (4) it has effectively enforced the rules when violations have been discovered.

Dir. Dep't of Labor & Indus. Relations v. Kiewit Pac. Co., Case No. OSAB-94-009 (OSHCO ID C6595), 1996 WL 33347449, at *3 (citation omitted). The Board found that IES failed to meet Element 3 and Element 4 of this defense. In its review of the Board Decision, the circuit court ruled, "With regard to the third element of [IES's] affirmative defense of employee misconduct the Court accepts the Labor Board's determination that [IES] did not conduct adequate field inspections of its work sites."

Element 3 required that IES show that it has "taken steps to detect and correct violations[.]" Id. As to Element 3, the Board Decision stated,

7

> The Board finds that [IES] failed to meet the requirement in Element 3 because of its failure to conduct adequate field inspections of the work being performed by its workers. While the testimony presented by Johnson, Woytus, and Marsh all described field inspection work performed after December 14, 2012, there is no clear evidence of a systematic field inspection program in effect prior to December 14, 2012, the date of the violations discovered by HIOSH at the Alewa Work Site. It is apparent that [IES's] realization of the need to perform frequent on-site inspections came after the occurrence on December 14, 2012 at the Alewa Work Site.

The Board specifically evaluated and weighed the testimonies of Woytus, Marsh, and Johnson, in rendering its finding that there was insufficient evidence regarding inspections prior to the December 14, 2012 violations. The Board also noted the testimony of Allen, regarding inspections in June, August and November 2012, in finding that "Allen's work site inspections [of] three in six months were clearly infrequent events."

The Board's determination that Element 3 of the employee misconduct defense was not established, is a mixed question of fact and law. The record contains substantial evidence to support the Board's determination that IES failed to conduct "adequate" or "systematic" field inspections to detect violations of its fall protection program prior to December 14, 2012. The circuit court was correct in affirming the Board's determination that IES failed to take adequate steps to detect and correct violations. See Kiewit, id. at *3; Kilakila, 138 Hawai‘i at 395, 382 P.3d at 207.

Element 4 of the employee misconduct defense required that IES establish that it has "effectively enforced the rules when violations have been discovered." Kiewit, id. As to this element, the Board Decision stated,

> The Board finds that [IES] failed to enforce its Fall Protection Policy for fall protection violations that occurred on December 14, 2012. There is no dispute that the Fall Protection Policy was violated, but [IES] nevertheless chose not to enforce the disciplinary aspects of the policy, and Kam, Bernard, Like, and Lee were all retained by [IES]. Although Kam, Bernard, Like, and Lee were given corrective counseling for their failure to comply with the 100% tie-off rule, none of them were suspended or terminated as required

by the Fall Protection Policy.  The disciplinary aspect of
the Fall Protection Policy states in "bold" print:

> **VIOLATION:**
> **Working outside the warning area without an**
> **appropriate fall protection device for any length of**
> **time _will_ result in _immediate_ suspension or**
> **termination of employment.**  (Emphasis in italics)
>
> . . . .
>
> The reasons cited by [IES] for its decision not to
> enforce the disciplinary aspect of the Fall Protection
> Policy (i.e., suspension or termination of the four workers)
> are inadequate and questionable . . . .
>
> . . . In this case, [IES's] Fall Protection Policy was
> disregarded and violated at all three levels of the company:
> (i) at the worker level where all four workers violated the
> 100% tie-off rule, (ii) at the field-supervisory level when
> Lee violated the tie-down rules and allowed other workers to
> violate the same, and (iii) at the top-management level when
> the [IES's] executive office allowed the four workers to
> violate its Fall Protection Policy and avoid the policy-
> mandated discipline.
>
> . . . .
>
> Therefore, the Board finds and concludes that [IES]
> has not met the requirement of Element #4 and cannot
> successfully assert the "employee misconduct" defense
> because Respondent failed to enforce its Fall Protection
> Policy for the violations that occurred on December 14,
> 2012, at the Alewa Work Site.

(bolding and italics in original).  In its review of the Board
Decision, the circuit court ruled,

> With regard to the fourth element of [IES's] affirmative
> defense of employee misconduct the Court accepts the Labor
> Board's determination that [IES] did not enforce its
> disciplinary policy.  The Court defers to the Labor Board's
> interpretation and finding that [IES's] disciplinary policy
> for fall protection violations is unequivocal and [IES] has
> not produced any evidence or case law to show that it had
> the discretion to deviate from it.

IES argues that post-violation disciplinary actions are
irrelevant to the employee misconduct defense because they could
not have contributed to the workers' violative conduct on the day
of the HIOSH inspection.  Because the Hawaii Occupational Safety
and Health Law is patterned after the federal Occupational Safety
and Health Act, the Board and the courts have looked to
interpretations of the analogous federal laws by the federal

courts and the Occupational Safety and Health Review Commission (**Review Commission**) for guidance.  See Permasteelisa, 125 Hawaiʻi at 228, 257 P.3d at 241 (citing French v. Hawaii Pizza Hut, Inc., 105 Hawaiʻi 462, 467, 99 P.3d 1046, 1051 (2004)); Kiewit, id. at *3.  Review Commission precedent "allows consideration of both pre- and post-inspection discipline." Sec'y of Labor v. Sunland Construction, Inc., 24 O.S.H. Cas. (BNA) 1831, 2013 WL 4732427, at *9 (July 16, 2013); Sec'y of Labor v. Quinlan Enterprises, 24 O.S.H. Cas. (BNA) 1154, 2013 WL 5505283, at *11 (July 22, 2013). The Board  rejected IES's argument below, stating, "For [IES] to argue that all post-violation acts are irrelevant is bad policy and not in the interest of the promotion of proper worker safety." See Dir. Dep't of Labor & Indus. Relations v. Buck Roofing Co., Inc., Case No. OSAB 95-069 (OSHCO No. C8955) (Rep. No. 103896007), 1998 WL 2026978, at *2 (1998) (considering only post-violation disciplinary action and finding "that Respondent's 'disciplinary' actions had no punitive effect because the employees were allowed to finish the project.").

IES also argues that as the employer, it "has the discretion to enforce its own policies as it determines to be appropriate under the circumstances," and that there were no legal requirements under the HIOSH statute and regulations to suspend or terminate employees who violate its safety rules.  "To prove that its disciplinary system is more than a 'paper program,' an employer must present evidence of having actually administered the discipline outlined in its policy and procedures." Sec'y of Labor v. Precast Serv., Inc., 17 O.S.H. Cas. (BNA) 1454, 1995 WL 693954, at *2 (Nov. 14, 1995) (emphasis added).  "Adequate enforcement is a critical element of the [employee misconduct] defense." Id.  IES's strict disciplinary policy called for immediate suspension or termination upon violation of its fall protection policy.  IES failed to do either after the December 14, 2012 violation.  IES's decision to not follow its policy and exercise discretion instead, foreclosed it from establishing the employee misconduct defense.

The Board's determination that Element 4 of the employee misconduct defense was not established, is a mixed question of fact and law. The record contains substantial evidence to support the Board's determination that IES did not enforce its own policies as required for the defense to apply. The circuit court was correct in affirming the Board's determination that IES did not effectively enforce its rules when violations were discovered. See Kiewit, 1996 WL 33347449 at *3; Kilakila, 138 Hawaiʻi at 395, 382 P.3d at 207.

Finally, in the fifth point of error, IES contends that the circuit court erred in holding IES "strictly liable" for the "unforeseeable misconduct of rogue employees." Because the circuit court was correct in affirming the Board's determination that Lee's knowledge of the violation was imputed to IES, IES is not being held "strictly liable," and this argument is without merit.

## IV. Conclusion

Based on the foregoing, the Circuit Court of the First Circuit's November 7, 2016 Final Judgment and Order Affirming Hawaii Labor Relations Board's Decision, and the Hawaii Labor Relations Board's February 3, 2016 Findings of Fact, Conclusions of Law and Decision and Order, are affirmed.

DATED: Honolulu, Hawaiʻi, January 6, 2021.

On the briefs:

Mark G. Valencia,
Michael R. Marsh,
(Case Lombardi & Pettit)
for Appellant-Appellant.

Herbert B.K. Lau,
Deputy Attorney General,
for Appellee-Appellee.

/s/ Lisa M Ginoza
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Karen T. Nakasone
Associate Judge

11